**UNITED STATES of America,
Plaintiff,**

v.

**Marshall Alfred OLKOWSKI,
Defendant.**

**No. CR–64–78.**

United States District Court
W. D. Wisconsin.

Nov. 8, 1965.

Michael J. Wyngaard, Asst. U. S. Atty., Madison, Wis., for plaintiff.

Victor V. Blackwell, Covington, La., for defendant.

JAMES E. DOYLE, District Judge.

This action came on for trial to the court, without a jury, on October 13, 1965. Testimony was received and documentary evidence introduced. Arguments of counsel were heard.

During the presentation of plaintiff's case, defendant moved for acquittal on the ground that in a certain letter dated June 27, 1962, and received by Local Board No. 52, Oneida County, Wisconsin, on June 28, 1962, defendant had requested an appeal to the appeal board from the local board order entered June 19, 1962, denying him a 4-D classification as a minister and classifying him 1-O as a conscientious objector, and that said request for an appeal to the appeal board had never been granted. The court took this motion under advisement.

At the close of plaintiff's case, defendant offered a second motion for judgment of acquittal, in writing. This motion rests upon several grounds: (1) that the denial of the 4-D classification by the local board and all administrative agencies was without basis in fact, arbitrary and contrary to the Selective Service Act and regulations thereunder; (2) that the denial of the 4-D classification by the local board and other administrative agencies reflected a failure to apply the statutory and regulatory definition of a minister and also reflected discrimination against the particular religion of defendant; (3) that the denial of the 4-D classification violated both procedural and substantive due process guarantees of the Fifth Amendment in that the record contains no evidence to contradict defendant's claim of minister's status, nor any proof incompatible with defendant's claim of minister status; (4) that the procedural and substantive due process guarantees of the Fifth Amendment were also violated by the failure of the local board to permit the appeal requested by defendant in his letter of June 27, 1962; (5) that the procedural and substantive due process guarantees of the Fifth Amendment were also violated by the arbitrary refusal of the local board to reopen and to consider anew defendant's classification, on January 14, 1964, and on May 13, May 15, May 19, and May 20, 1964, in the light of new evidence submitted by defendant on or about these dates; and (6) that the government had wholly failed to prove defendant guilty beyond a reasonable doubt. The court also took this motion under advisement.

The court finds, from the entire record, that at Rhinelander, Oneida County, in the Western District of Wisconsin, on May 20, 1964, the defendant did knowingly fail and neglect and refuse to obey an order of Local Board No. 52, Rhinelander, Oneida County, Wisconsin, to accept employment to perform civilian work at Madison General Hospital, Madison, Wisconsin, for 24 consecutive months; the court also finds that such civilian work contributes to the national health, safety, and interest.

Plaintiff's exhibit 1 is defendant's complete selective service file. From this file the court finds that on June 19, 1962, when defendant was initially classified by his local board as a conscientious objector (1-O) rather than as a minister (4-D); on August 14, 1962, when defendant was again classified 1-O; on January 14, 1964, when the local board declined to reopen defendant's case; on

March 6, 1964, when the local board again declined to reopen defendant's case; and at all times to and including May 20, 1964, there was basis in fact in the record to support the failure and refusal of the local board to classify defendant 4-D.

When defendant filled out his classification questionnaire on May 24, 1962, he stated that he was employed at Monico, Wisconsin, as a woods worker, working an average of 40 hours a week; that he was a minister of Jehovah's Witnesses; that he was a conscientious objector; and that his employment as a woods worker was a "job that I used to support my ministry". In a "special form for conscientious objector", executed June 4, 1962, defendant showed his employment as both "wood worker" and "Ministry & Missionary"; he said that he preached from house to house regularly each week, that he conducted home bible studies (without indicating the frequency), that he gave one hour bible sermons in Rhinelander (without indicating the frequency), and that he spent about twelve hours each week in personal study preparing himself for the ministry.

On August 14, 1962, defendant met with the local board. A written account of the meeting was prepared by the board's secretary. From this account, it appears that as of August 14, defendant was still working about 40 hours a week in the woods, skidding pulp, and was known as a teamster; that he was spending about 14 hours per month on house to house calls; that he was spending about 30 hours per month preparing for this work; and that from August 1 through August 14 he had devoted about 10 hours to field service work for Jehovah's Witnesses. At the August 14 meeting, defendant described his daily schedule in a manner which corresponded roughly with the foregoing summary.

On January 14, 1964, defendant filed with the board a certain document executed by various representatives and members of Jehovah's Witnesses, supporting his claim that he was an ordained minister of Jehovah's Witnesses, but not containing any additional detailed information as to the amount of time he was devoting to his religious work. The local board's record of a conference with defendant on January 14, 1964, shows that he stated he then was a "magazine territory servant" of Jehovah's Witnesses and that he also gave talks in different cities.

On April 7, 1964, the local board received two letters from the defendant, each dated March 29, 1964, with various enclosures intended to support his claim to minister-classification; from these materials, it appeared that defendant was then spending 23 hours per week in what he considered "ministry" work; that he was still spending approximately 40 hours a week in what he considered "secular work"; that he had been appointed to serve as a "vacation pioneer minister" for the period from March 18, 1963 to March 31, 1963; and that he had served as a "magazine and territory servant" since May 7, 1960. In a letter dated April 18, 1964, with enclosures, which was received by the local board on April 21, 1964, the defendant furnished additional materials not including any significantly new or more detailed information as to his religious function.

On May 6, 1964, the local board reviewed the information received from the defendant on April 7, 1964, and April 21, 1964, declined to reopen his classification, and directed that he be notified to report on May 20, 1964, for civilian work at Madison General Hospital. Such a notice was mailed to defendant May 7. Further communications from defendant were received by the local board May 13, May 15, May 19, and May 20, 1964, none of which contained any significantly new or detailed information bearing on his claim to minister-classification.

On this record, as of the various dates on which the local board acted on defendant's classification and declined to reopen his classification, there was basis in fact for a conclusion that: defendant's religious activity was not his regular and customary vocation; he irregularly and incidentally preached and taught the

principles of religion of his sect; and he did not regularly, as a vocation, teach and preach the principles of religion and administer the ordinances of public worship of his sect. 50 App.U.S.C., Section 466 (g). Defendant contends that the local board was obliged to grant the 4-D classification in the absence of evidence contradicting, or incompatible with, defendant's claim to minister status. Such a contention may well have merit when the information submitted by a registrant reasonably compels the conclusion that he is a minister as the statute defines the term. But here the information provided by defendant himself did not reasonably compel such a conclusion; indeed, it reasonably compelled the conclusion that his activities did not meet the statutory standard.

Except for the matter referred to in the balance of this opinion, therefore, no valid ground exists for overturning the classification and reclassification by the local board in 1962, or for holding that the local board was arbitrary in its subsequent refusals and failure to reopen the classification.

Defendant contends, however, that he was denied his right to an appeal to the appeal board from the classification by the local board.

On June 19, 1962, defendant was classified for the first time and on June 25, 1962, a notice was mailed notifying him that he had been classified 1-O. On June 28, 1962, the local board received from defendant a letter dated June 27, 1962, which said: "I *Marshall Olkowski*, subject to the right of personal appearance, appeal my 1-O classification to the local board of appeal."

Rather than to treat this June 27 letter as a request for review of his classification by the appeal board, the local board, by its secretary, replied on June 28, 1962: "We have received your request for a hearing before this Local Board." The June 28 letter informed defendant that he would be notified of the time and place of the local board meeting. Such a meeting was held July 24, 1962, but defendant mistook the meet-ing place, and the meeting with the local board then occurred August 14, 1962. The secretary's typewritten summary of the August 14 meeting contains no reference to review by the appeal board. Following the meeting with defendant, the local board, on August 14, again classified him 1-O and a notice to this effect was mailed to him on that date.

There was unease as to whether defendant's June 27 request had been honored. On August 29, 1962, the secretary of the local board wrote to state headquarters of Selective Service, enclosing defendant's "cover sheet" and "requesting your comments". The letter explained that after the August 14 hearing, defendant had again been classified 1-O and: "to date the registrant has not filed an appeal. Please note letter in file dated 27 June 1962. Does this constitute an appeal even though he has not filed one since last classification?" On August 30 the administrative officer of the state headquarters of Selective Service replied to the local board. He explained that following the June 19 classification, defendant had had the right both to a personal appearance before his local board and to a review of his classification by an appeal board; he observed that "it isn't entirely clear" whether defendant's June 27 letter requested both a personal appearance before the local board and a review by the appeal board; he suggested that defendant be requested to file a statement whether he desired "that his classification be reviewed by an appeal board"; he further suggested that "if review is requested" it be accepted; and finally he asked to be advised "if the registrant does not request appeal board review."

Thereupon the local board wrote to defendant on September 4, 1962:

"It is not entirely clear to us from your letter of 27 June 1962 whether you requested both a personal appearance and appeal board review.

"Would you please send a statement advising us if you do or do not wish your classification of 14

August 1962 reviewed by an appeal board."

In a letter dated September 24, 1962, and received by the local board September 25, defendant replied:

"In reply to your letter of September 4, 1962.

"I do not wish my classification of August 14, 1962 to be reviewed by an appeal board."

On September 25 the local board wrote to the State Headquarters as follows:

"A letter was written to registrant above on 4 September 1962, requesting that he send a statement advising us if he did or did not wish he [sic] classification of 14 August 1962 reviewed by an appeal board.

"We received a reply today, stating, 'I do not wish my classification of August 14, 1962 to be reviewed by an appeal board.'"

No review by the appeal board was ever made.

The government appears to contend: (a) defendant's letter of June 27 did not contain a request for review by the appeal board; and (b) even if the letter of June 27 is considered to have contained such a request, the error in failing to grant the appeal was cured by defendant's letter of September 24.

 Defendant's June 27 letter should have been treated as a request for review by the appeal board. Both the local board and state headquarters expressly commented that it was not clear whether defendant's June 27 letter constituted such a request. The sensible course was so to treat it. Not only was this the sensible course; it was the course required by law. Section 1626.11 of Selective Service Regulations specifically provides that the written notice of appeal "need not be in any particular form", and that the "language of any such notice shall be liberally construed in favor of the person filing the notice so as to permit the appeal." It has been held that the right to review by the appeal board is absolute and that an order to report

for duty, while an appeal is pending, is invalid. Chih Chung Tung v. United States, 142 F.2d 919 (C.A.1st, 1944.)

Was the local board's denial of defendant's right to review by the appeal board cured by the local board's letter of September 4 and his reply of September 24? It should be noted that the entire sequence by which the local board consulted the state headquarters, the state headquarters suggested an elucidation by defendant, and the local board sought such an elucidation by defendant was an improvisation. It is doubtful whether under any circumstances such an improvisation could cure the initial failure to treat defendant's June 27 letter as a notice of appeal. Assuming an improvisation could be effective in some circumstances to cure an earlier failure to grant an appeal, clearly the purpose of the improvisation is not to tidy up a record and to foreclose a registrant from the exercise of his rights or from subsequently raising a defense to prosecution. Such an improvisation, to be curative, would necessarily involve a generous effort fully and effectively to apprise defendant of all his rights and of his complete range of alternatives.

The improvisation here failed to meet such a test. The letter of September 4 from the local board to defendant did not state explicitly that, following his June 19 classification, he was entitled both to a personal appearance before the local board and to a review of his classification by a separate entity, namely, the appeal board. The letter did not say that he had been granted one of these rights, but not the other. Nor did it ask directly whether, by his letter of June 27, defendant had intended to invoke both of these rights with respect to his June 19 classification; instead, the board's letter inquired whether defendant wished his August 14 classification reviewed by an appeal board. Defendant's letter of September 24 responded directly, precisely, and exclusively to the exact question put to him: "I do not wish my classification of August 14, 1962 to be reviewed by an appeal board."

The sequence brought little light into the darkness and by no means dispels the uncertainty which had prompted the local board to pursue the matter.

There is evidence that defendant was in fact initially confused, and that he remained so for a time, as to the distinction between a personal appearance before the local board (which was accorded him August 14), on the one hand, and review by an appeal board, on the other.

On January 14, 1964, defendant met with the local board and with a George Ellis, representing the state director of Selective Service. The local board's written account of this meeting includes the following:

> "We note that in your letter of 24th September, 1962, you stated you did not wish your classification of 1-O to be reviewed by an Appeal Board.
>
> "Yes, this is correct."

Defendant's written account of the same meeting includes the following:

> "Mr. Ellis stated that I had not appealed my 1-O classification. In reply to this I stated that I received my 1-O classification and I appealed this to the draft board by requesting a personal appearance which was given me."

The two accounts are not contradictory. Both written accounts of the meeting, in their entirety, make it clear (as does defendant's entire Selective Service file) that defendant was insisting steadfastly that he was entitled to minister-classification. In a letter from defendant dated March 29, 1964, and received by the local board April 7, 1964, he submitted additional evidence in support of his claim to 4-D classification, asserted that earlier he had not understood the appeal procedure, and requested the local board to reopen his classification. As already indicated, the additional evidence was insufficient to oblige the local board to reopen the classification. However, defendant's request provided a further occasion to accord him an appeal board review of his classification. (Although it occurred subsequently to the issuance of the order to defendant to report for civilian work, the exchange of letters between defendant (May 11, 1964) and the state director (May 14, 1964) once again raised the question of an earlier misunderstanding concerning appeal procedure and provided still a further opportunity to correct the situation.)

While defendant's contentions in 1964 that he was confused in 1962 as to appeal procedures may be viewed as self-serving, his subsequent explanation of his September 24, 1962, letter is credible in view of his unwavering insistence upon his rights to 4-D classification.

 For the reasons given, and upon the basis of the entire record herein, and on the specific ground that defendant was denied his right to review by an appeal board of his classification by his local board, the Court finds and adjudges defendant not guilty of the crime charged in the information on file herein.