**UNITED STATES of America,**
**Appellee,**

v.

**Walter Lee COOK, Appellant.**

**No. 20229.**

United States Court of Appeals,
Eighth Circuit.

July 26, 1971.

---

Robert G. Duncan, Kansas City, Mo., for appellant.

Paul Anthony White, Asst. U. S. Atty., Kansas City, Mo., Bert C. Hurn, U. S. Atty., for appellee.

Before CLARK, Associate Justice,* BRIGHT, Circuit Judge, and HARPER, District Judge.

BRIGHT, Circuit Judge.

In this case, appellant Walter Lee Cook raises an important question relating to the duration of time a Selective Service registrant classified as a conscientious objector may be liable for the performance of appropriate work as a civilian in lieu of induction into the Armed Forces. Cook's local Selective Service Board initially directed him to perform civilian (hospital) work in the national interest for a period of twenty-four consecutive months commencing April 12, 1965. During the eight months which Cook spent in this type of employment, two different employers terminated him as an employee. No other appropriate employment could be found for Cook during the year 1966. In January 1967, Cook's local board issued an order requiring him too serve twenty-four more consecutive months doing agricultural work at the University of Missouri College of Agriculture. Cook undertook this employment several months later, only after the instigation of criminal proceedings against him for violation of the Selective Service Act, which proceedings were later dropped. Cook remained at the University of Missouri College of Agriculture from October 1967 until mid-May 1968, when he left this job, allegedly because of his ill health. The government thereafter indicted Cook for violation of 50 U.S.C.App. §§ 456(j) and 462(a), charging specifically that on May 17, 1968, he had refused to comply with an order of his Selective Service Board by failing to remain in civilian employment at the University of Missouri College of Agriculture for a period of twenty-four consecutive months. Cook was convicted, after a jury trial, under this indictment which charged a violation occurring on a date more than twenty-four months after he had first commenced his civilian work. In this appeal, Cook contends, *inter alia*, that the Selective Service Board had issued its January 1967 order in violation of his Fifth Amendment rights to due process, since the order required him to perform more than twenty-four months of civilian work, contrary to the mandate of the Selective Service Act. Additionally, Cook contends that he had completed his twenty-four month obligation in the context of the pertinent statute and regulations.

Because our decision in this case turns closely on its particular facts, a detailed chronological analysis of the pertinent events is warranted. In the instant case, the local Selective Service Board reclassified Cook from I–A to I–O in March 1964. In April of 1964, Cook physically qualified as acceptable for induction into the Armed Forces. Cook, by completion of an appropriate Selective Service form for civilian employment in March of 1965, requested assignment first to hospital work, second to agricultural work, and third to maintenance work. In that same month, he executed a form volunteering for civilian work prior to the time in which he ordinarily would have been called were he to have been inducted into the military service. Shortly thereafter, Cook's local board ordered him to report for civilian work at the Menorah Medical Center in Kansas City, Missouri. He commenced this work on April 12, 1965. By mutual agreement of Cook and his employer, this job terminated on September 17, 1965. According to Cook, his religious beliefs conflicted with this employer's requirement that he work on Saturdays.[1] The Deputy Director of Selective Service for the State of Missouri thereafter assigned Cook to perform maintenance work at the University of Kansas Medical Center, Kansas City, Kansas. Cook entered this employment as ordered on

---

* The Honorable Tom C. Clark, Retired Associate Justice of the United States Supreme Court, sitting by special designation.

1. Cook belonged to the Radio Church of God of Pasadena, California (now World Wide Church of God).

September 23, but worked only until October 6, 1965, when he was discharged for an "unsatisfactory attitude and a poor work record." The State Director did not find other work for Cook until December 13, 1965, when Cook, as directed, reported for work at the University of Missouri Hospitals in Columbia, Missouri. There Cook complained to his prospective employer of physical impairments, and consequently was not hired.

During September 1966, the State Director's office, by letter, advised Cook that he remained classified I–W (conscientious objector performing appropriate civilian work, 32 C.F.R. § 1662.2) and that Cook should attempt to find approved civilian work on his own.[2] In late 1966, Cook accepted a job with the Internal Revenue Service and worked for a few days. He notified his local board of his employment and it responded that such work was not approved.

In the meantime, in response to a suggestion made by the State Director, the local board, on January 6, 1967, sent Cook a new order requiring him to report for agricultural work at the University of Missouri College of Agriculture for a new period of twenty-four consecutive months or until such time as he might be released or transferred by proper authority. Cook reported on the date directed, January 7, 1967, but he declined to accept any employment at

that time. He complained to the University's employment personnel that he lacked funds for subsistence away from home until the date of his first paycheck.[3] Cook also advised his local board of his inability to accept a position at the College of Agriculture. As a result of this conduct, the State Director initiated proceedings early in 1967, which culminated in the filing of a federal criminal complaint against Cook. In order to avoid further prosecution, Cook agreed to work at the University in Missouri College of Agriculture. He executed a new application for civilian work and his local board, on October 19, 1967, reissued its earlier order which had directed that Cook report for work on January 17, 1967. The United States Attorney then dropped all criminal charges. In response to the reissued order, Cook reported to the University of Missouri for janitorial work on October 31, 1967. As we have noted, this order called for twenty-four months of continuous service.

Cook remained on the employment roll at the University of Missouri until May 17, 1968. On that date he left his job, but notified his employer that he was undergoing medical treatment for an ailing back. During the six and one-half month period of employment at the University of Missouri, his employer recorded that Cook was absent from his

2. The letter read in part:

You are, of course, classified I-W by reason of having entered upon civilian work and are retained in that status even though you are not presently employed whereby you will receive credit for the performance of civilian work in lieu of induction. This office has made numerous inquiries and requests for employment opportunities in your behalf on the part of approved institutions, however you have by your own action beclouded a desirability for utilization of your services to an extent that we have not as yet been able to secure a job offer.

The fact that we are trying to find employment and have been unsuccessful does not preclude efforts on your part to secure and enter approved civilian work whereby you may complete the obligated

tour of twenty-four consecutive months of civilian work in lieu of induction.

3. 32 C.F.R. § 1660.21(b) authorizes the Director of Selective Service, when necessary, to issue

travel tickets or transportation requests and meal and lodging requests * * * for the travel of the registrant from the office of the local board to the place of performance of the work to which he is ordered, for his return travel from such place * * * upon his satisfactorily completing his period of work, and for his travel from one place of employment to another when his employment is transferred under the provisions of paragraph (c) of this section

This regulation appears not to authorize funds to maintain a registrant at the place of his civilian employment.

job a total of more than seven weeks. When Cook failed to return to the University of Missouri by the next fall, the University terminated him as an employee retroactive to his last day of work, May 17, 1968. Cook's prosecution and conviction in the instant case followed.

Cook's conviction must be reviewed in light of the pertinent statute, 50 U.S.C. App. § 456(j), which provides:

Any person * * * shall, * * * if he is found to be conscientiously opposed to participation in * * * noncombatant service, in lieu of such induction, be ordered by his local board, subject to such regulations as the President may prescribe, to perform for a period equal to the period prescribed in section 4(b) [section 454(b)] [twenty-four consecutive months] * * * such civilian work contributing to the maintenance of the national health, safety, or interest as the local board pursuant to Presidential regulations may deem appropriate and any such person who knowingly fails or neglects to obey any such order from his local board shall be deemed, for the purposes of * * * [section 462] of this title * * *, to have knowingly failed or neglected to perform a duty required of him under this title.

In implementation of this statute, the Selective Service regulations limit appropriate civilian work to employment in nonprofit hospitals, educational institutions and the like, 32 C.F.R. § 1660.1, and provide procedures for ordering and assigning the registrant to the type of civilian work he desires, 32 C.F.R. § 1660.20. Although the initial order to perform civilian work emanates from the local board, the State Director assumes responsibility for the administration of the registrant's work, 32 C.F.R. § 1660.31, and said Director initiates any action which may lead to the registrant's prosecution for failure to obey an order to perform his civilian work assignment, 32 C.F.R. § 1660.30.

There is a notable lack of instruction concerning procedures to be followed in declaring a registrant delinquent for failure to satisfy the requirements of his civilian employer. 32 C.F.R. § 1660.-21(c) provides:

Whenever at any time before the registrant has performed for a period of twenty-four consecutive months the work to which he has been ordered by the local board such work ceases to be available for performance by the registrant for any reason *not due to the fault of the registrant* such as, but not limited to, the cessation of the work or the termination of his employment by his employer, the registrant shall be ordered to perform the same type of work with another employer. If the registrant complies with this order, such transfer of employment shall not constitute a break in his required period of twenty-four consecutive months of performance of work. (Emphasis added.)

32 C.F.R. § 1660.31 specifies in part:

When the registrant has satisfactorily completed this work, the State Director of Selective Service shall return this registrant's cover sheet to the local board together with a letter stating that the registrant has *satisfactorily completed his work*. If the registrant should fail to perform such work, or should otherwise fail to perform his duties under title I of the Military Selective Service Act of 1967, during the time that his cover sheet is in the custody of the State Director of Selective Service, the State Director of Selective Service shall forward the cover sheet to the Director of Selective Service for a determination as to whether or not the registrant shall be reported to the Department of Justice for prosecution. (Emphasis added.)

Although these regulations refer to the registrant's not being at "fault" and "satisfactorily" completing his work, no regulation specifically articulates the

standard of performance for a registrant, nor otherwise defines when time runs, or does not run, as part of the twenty-four month service obligation.

The government in this case construes § 1660.21(c) to require a registrant to begin his twenty-four months of service anew upon a change of jobs unless the registrant establishes his lack of "fault" for the termination. Accordingly, the government contends that when the University of Kansas Medical Center terminated Cook's employment on October 6, 1965, the defendant remained liable to perform civilian work in lieu of induction into the Armed Forces for a full period of twenty-four consecutive months. When Cook's employment at the University of Missouri College of Agriculture lasted only from October 31, 1967, to the next May 17, the government brought this prosecution. The district court adopted the theory propounded by the government as the applicable law. It instructed the jury:

I want to instruct you that the only question for you to determine in this case is whether or not the defendant did wilfully and knowingly fail, refuse, or neglect to comply with an order of his Selective Service Board 162, Lee's Summit, Missouri, to remain in the employment of the College of Agriculture, University of Missouri, for a period of twenty-four consecutive months or until such time as released or transferred by proper authority.

The appellant argues here, as he did on motions for an acquittal, that after he entered civilian employment on April 12, 1965, up to the time that his local board assigned him to work at the University of Missouri College of Agriculture in January of 1967, he had spent twenty-one months in the program and that when he ultimately reported for work at the University of Missouri in October of 1967 under the reissued original order, his employment from October 31, 1967, to May 17, 1968, satisfied his Selective Service obligation.

The district court met and rejected this argument noting:

The contention that defendant was subject to the control of the Local Board under the controlling statute for a period in excess of the 24 consecutive months is without merit. The evidence clearly shows that defendant did not work for 24 consecutive months on any of his assignments; nor did the total number of months worked by him on all assignments amount to twenty-four months.

The district court added:

Further, from the evidence adduced in the trial the jury could reasonably conclude that the unscheduled terminations of his employments were the result of his own fault and thus that he should not be credited with the time which elapsed between work assignments, or since his original order to work.

The government argues that the twenty-four month period commenced anew on October 31, 1967, and that defendant left this last job, as well as the earlier ones, without proper reason. Cook, to the contrary, claimed that he could not tolerate the manual labor that he was called upon to perform at the University of Missouri College of Agriculture and on other assigned civilian jobs because of a pre-existing disability of his back.[4] The issue of fault for Cook's unscheduled terminations, however, had never been authoritatively passed upon by the Selective Service System, nor, as shown by the instructions quoted above, was this question submitted to the jury by the district

4. X-rays disclose the existence of a congenital defect in Cook's back. He suffers from a spina bifida occulta. This condition represents a failure of fusion of lamina, or two of the bony processes at the level of the first sacral segment. Those physicians who examined Cook for the Armed Forces considered this defect nondisabling and Cook fully qualified to perform military duty. Cook presented testimony from two osteopathic physicians to the contrary on the issue of disability.

court. Despite Cook's deplorable performance record, we cannot sustain a criminal conviction where no determination has been made whether the interruptions in employment prior to May 17, 1968, were attributable to the registrant's willful misconduct or fault, thus delaying the expiration of his service obligation.

The problem presented here is a legal one of determining whether the time runs, is tolled, or starts anew for a I–W registrant who is not continuously employed for twenty-four months. Appellant Cook, although possessing a I–W classification for over twenty-four months, concedes that he did not actually work twenty-four months in civilian employment. According to the computations submitted by the government, Cook actually worked no more than eleven months and five days, including those periods of time during which he did not report for duty because he was either undergoing medical treatment or absent because of claimed physical disability. However, a registrant's low level of performance or failure to satisfy an employer's wants in and of itself is not defined as a crime under the Selective Service laws.

The Director wrote Cook on December 1, 1965, informing him that he would not be charged for any work interruption to that time. Although Cook did not take work at the University of Missouri Hospitals, Columbia, Missouri, on December 13, 1965, as ordered, the Selective Service System continued to exercise jurisdiction over the registrant during 1966. The Deputy State Director, on September 16, 1966, notified Cook that he remained in a I–W classification and directed him to try to find approved civilian work. He received no further directions concerning employment until he received the order to report to the University of Missouri College of Agriculture on January 17, 1967. Cook's Selective Service file shows no action taken to this point to notify Cook that he had not "satisfactorily" performed his civilian duties or that he was

at "fault" for unscheduled terminations. As we have noted already, although Cook did not initially comply with the Board's order to report to the College of Agriculture, he later, under the threat of criminal prosecution, responded to that order as reissued, and he remained on the College payroll for approximately six and one-half months.

The obligation to perform civilian work is, after all, in lieu of a military obligation. The parties refer us to other statutory provisions governing those in the military and stipulating the kind of duty which complies with a soldier's enlistment period. 10 U.S.C. § 972 reads:

An enlisted member of an armed force who—

(1) deserts;

(2) is absent from his organization, station, or duty for more than one day without proper authority, as determined by competent authority;

(3) is confined for more than one day while awaiting trial and disposition of his case, and whose conviction has become final;

(4) is confined for more than one day under a sentence that has become final; or

(5) is unable for more than one day, as determined by competent authority, to perform his duties because of intemperate use of drugs or alcoholic liquor, or because of disease or injury resulting from his misconduct; is liable, after his return to full duty, to serve for a period that, when added to the period that he served before his absence from duty, amounts to the term for which he was enlisted or inducted.

Frequently, one in the military may not be assigned to any particular duty, and yet, pursuant to the foregoing statute, this time is credited upon his military service obligation unless "competent authority" determines the soldier is not available for duty as a deserter, one absent without leave, or one unavailable because of disease, injury, or improper

use of drugs or alcoholic beverages. While the military analogy drawn by appellee may be somewhat appropriate, the instant case differs in one crucial respect. Here it had not been "determined by competent authority" that the registrant's conduct rendered him unavailable for civilian work, or otherwise ineligible for credit of any period of time against his service obligation.

■ We particularly note that the pertinent federal statute on which this prosecution rests designates the period for performance of civilian work as "equal to the period" prescribed for the military service. 50 U.S.C.App. § 456(j). The text of the regulation, 32 C.F.R. § 1660.21(c), which we have previously quoted in this opinion, contemplates circumstances in which a registrant's employment is broken without interrupting the time running against the registrant's service obligation, since it provides the time continues to run upon such break, except if the termination of employment was at the registrant's "fault" and provided that the registrant comply with a subsequent order to work. In the light of the statute and pertinent regulations, we think it clear that the term "serve * * * for a period of twenty-four consecutive months," 50 U.S.C.App. § 454(b), considered with 50 U.S.C.App. § 456(j), means that time is to run continuously from the first entry into civilian service by a conscientious objector, but not counting interruptions attributable to the fault or neglect of the registrant. As is the case with the military serviceman, a "chargeable" interruption need be shown. The mere fact of such interruption will not initiate the beginning of a new twenty-four month period.

■ Despite this clear meaning of 50 U.S.C.App. § 454(b), the Board's order of January 6, 1967, reissued in October of the same year, directed that Cook report for a full twenty-four consecutive months of work at the University of Missouri College of Agriculture. This order disregarded Cook's prior civilian service and, in overall effect, required a greater period of service than that specified by the applicable law.

■ Cook did not deny leaving his place of employment on May 17, 1968, and the jury passed only on whether he left willfully and intentionally rather than because of a physical disability. The government thus has here procured a conviction without demonstrating, either by administrative action or by the jury verdict, that Cook did not in fact spend twenty-four months in satisfaction of his service obligation under the civilian work program. The record clearly establishes that Cook was subject to this program during the periods from April 12, 1965, when he first reported for civilian work, to January 17, 1967 (twenty-one months), in which the Selective Service Director indicated that he continued to be in the I–W classification (see n. 2, *supra*), and the subsequent period of six and one-half months beginning on October 31, 1967, in which he was carried as an employee of the University of Missouri College of Agriculture. In the light of these circumstances and the invalid work order requiring as it did a full twenty-four additional months of service, this conviction was improper, and we, therefore, are unable to enforce it. *See* Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970); Estep v. United States, 327 U.S. 114, 121, 66 S.Ct. 423, 90 L.Ed. 567 (1945); *see also* Breen v. Selective Service Local Board No. 16, 396 U.S. 460, 465, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970); Oestereich v. Selective Service System Local Board No. 11, 393 U.S. 233, 237, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968). We therefore set the conviction aside.

■ If the Selective Service intends to prosecute young men for failure to perform their obligation to perform civilian service, we think, in the light of due process requirements, the Selective Service System must adopt well defined administrative rules and regulations which articulate the standards of required performance and provide for ap-

propriate notice of violations of those standards.

■ The State Director is charged with the responsibility of overseeing a registrant's civilian work performance, and he further assumes the duty of reporting facts to the National Director which bear on a possible prosecution of a registrant, should the latter fail to perform his work satisfactorily. 32 C. F.R. § 1660.31. We think it implicit in this regulation, previously quoted, that the State Director possesses the preliminary power to make the determination whether a registrant is or is not performing satisfactorily in his work. Such a determination should be made within the context of fair and appropriate regulations placing the registrant on notice that time is not running against his civilian service obligation and offering the registrant a fair opportunity to answer these claims or charges made against him.

Our decision is a narrow one and limited to the particular facts before us. We can in no way condone Cook's job performance, particularly since the jury, as shown by its verdict, did not believe that Cook suffered any physical disability. The trial court's characterization of defendant as a person "who has been pampered and over-protected by his mother and backed up by his mother and his father in his attitude toward performing military service" is reflected by the record. We agree that his attitude and conduct deserve censure, but they do not warrant criminal sanctions on the particular record before this court.

■ Moreover, our decision does not reflect agreement with Cook's contention that he has already performed twenty-four months of civilian service. At most, we only say that under the government's theory of this prosecution the jury was given no opportunity to pass upon this issue. Whether Cook, between his entry into civilian work on April 12, 1965, and his departure therefrom on May 17, 1968, has satisfied his obligation to perform civilian service within the context of the statutory and supplementary regulation, has, as yet, not been authoritatively determined. The Selective Service jacket of the appellant, which we have examined, shows that Cook made a special agreement with the United States Attorney acting on behalf of the local board, in which the registrant agreed to fully perform his obligation. We see no reason why he should not be held to that agreement. We leave enforcement of that obligation up to the State Director. In determining the amount of civilian service still owed by Cook, administrative due process would require that the registrant have the opportunity to know the charges and claims made against him and be afforded the opportunity to rebut them. Should the State Director require that more work time be performed and Cook refuse to comply, it should be soon enough to pursue criminal penalties.

Reversed.