UNITED STATES of America, Plaintiff,

v.

John Kenneth TREPP, Defendant.

No. 4–71 Cr. 124.

United States District Court, D. Minnesota, Fourth Division.

Oct. 22, 1971.

Robert G. Renner, U. S. Atty., by Thorwald H. Anderson, Asst. U. S. Atty., for plaintiff.

Francis X. Helgesen, Minneapolis, Minn., for defendant.

NEVILLE, District Judge.

Defendant registered with his local draft board No. 37 December 21, 1965.

After a series of II-S (student) classifications, on July 10, 1970 he was classified I-A on a vote of 3–0 by his local board. August 31, 1970 he was ordered to report for induction on September 21, 1970 at which time he reported but refused induction. He asserted that he was not satisfied with his previous medical examination, and on advice from the United States Attorney's office it was recommended that defendant be given a new reporting date. This ultimately was set for April 12, 1971 at Minneapolis, on which occasion the defendant again refused induction, failing even to report to the induction station. Defendant asserts three principal defenses:

■ 1. His order to report for pre-induction physical issued May 27, 1970, was issued in violation of Section 1628.-11(c) of the Selective Service Regulations promulgated in June, 1970, in that the action contemplated therein is Board action and not action by the Clerk of the Board. The regulation reads:

> "The *local board* may also mail an Order To Report for Armed Forces Physical Examination (SSS Form 223) to any registrant who is classified in a class other than Class I-A, Class I-A-O, or Class I-O if it determines that his induction may shortly occur. The local board shall mail an Order To Report for Armed Forces Physical Examination (SSS Form 223) to a registrant whenever directed to do so by the Director of Selective Service or the State Director of Selective Service." [Emphasis added.]

There does not appear to be in the file any specific recordation or minutes of action by the local board taken at any of its meetings authorizing the clerk specifically in this case to issue the notice to report for pre-induction physical. The board's executive secretary, however, testified that it is standard operating procedure for the clerk to keep a note of registrants whose induction is becoming imminent and to issue a notice for a physical examination. She also testified that such procedure was applicable in this case because the registrant's last

II-S classification by its very terms expired in June, 1970. While in view of the decision hereinafter it is perhaps unnecessary for the court to pass on this issue, it would seem that the contention has little merit. This is purely a ministerial task of keeping track of dates and properly could be delegated to the clerk.

2. Within 30 days after defendant was classified I-A and received the usual notice thereof mailed July 13, 1970, under date of August 8, 1970 he addressed a letter to the board which it is necessary here to quote in full:

"Dear Board 37,

When I received my 1A classification, I realized that you must have been under the impression that I had taken and passed a complete physical examination. However, this is not the case, as I will explain below.

The notice I received telling me of my pre-induction physical recommended that I bring along a doctor's statement concerning any physical ailment that might disqualify me for military service. Since my family doctor has retired, I went to the University of Minnesota Health Service, where a doctor diagnosed my knee as a severe Osgoods-Slatter disease. This matched previous diagnoses by my family doctor, and so I asked for a statement to that effect. He replied that he 'was not familiar with current military standards', and that the army could judge for itself on the basis of an army examination of the knee.

I reported for my pre-induction physical as scheduled, on June 15th. During the interview with the doctor, I told him of my knee and about the University doctor's recommendation. He noticed the lump on my knee, and said that the first thing to do was have it x-rayed. He then gave me a form for an x-ray which he said I would have 'after the hearing test.'

Shortly afterward, a different doctor came by and examined everyone's eyes, ears, shoulders, hands, anuses, knees and feet. He examined all the other parts of my body, but he skipped my knees because he saw my form, and knew it was for a knee x-ray.

When I came out of the hearing test, I asked about my x-ray, and I was told, 'after the eye test.' I asked again after the eye test, but no one knew anything about it. Eventually, I was led to the final check-out desk.

I handed my x-ray form to the man behind the desk and asked where I should go. The man threw my form into the wastebasket and said, 'You don't need any fucking ex-ray.' I suggested that he was mistaken and that I really did need an x-ray on my knee. Although the man did not appear to be a doctor, he said, 'There is nothing wrong with your God-damned knee.' When I asked why the doctor would tell me to have an x-ray if I didn't need one, his only reply was that the man was 'not an army doctor.' There was nothing I could do but leave.

In my opinion, I have not yet completed a pre-induction physical. I would be willing to retake the physical, or see a specialist, which ever you would prefer. *But as for now, the circumstances do not permit me to accept a 1A classification.*

Yours Truly,

/s/ John Trepp

John Trepp

21–37–47–235"

Defendant asserts that this should have been considered by the clerk and/or the local board as a notice of appeal; that not having been accorded the appeal which this letter afforded and required the induction notice is void; and that the clerk usurped the function of the board in determining that this was not a notice of appeal and not bringing it to the attention of the Board.

He contends in the words of his brief that the letter constituted:

"(a) A notice of appeal of his 1-A classification, or

(b) a notification to his local board, who had the obligation under its rules and regulations to properly classify him, that his claim of a less than a complete medical examination should have been brought to the attention of AFEES or in the alternative obligated the local board to provide for a medical interview by the medical advisor to the local board consistent with the provisions of 11628.1 and 1628.2 of SS Rules and Regulations.

(c) A disclosure of information not considered by the board when the 1-A classification was issued establishing a potential or prima facie claim for a change in classification (possibly to 1-Y or IV-F) obligated the local board to reopen his classification under the holding of the Supreme Court in 'Mulloy', hereinafter cited"

The regulation 32 C.F.R. 1626.11, provides in pertinent part:

"PROCEDURE FOR TAKING APPEAL

1626.11 How Appeal to Appeal Board Is Taken.—(a) Any person entitled to do so may appeal to the appeal board by filing with the local board a *written notice* of appeal. Such notice need not be in any particular form but must state the *name of the registrant* and the name and identity of the person appealing so as to show the right of appeal. The language of any such notice *shall be liberally construed* in favor of the person filing the notice so as to permit the appeal." [Emphasis added.]

The court has read the letter carefully and cannot find any request therein for a personal appearance nor the use of the word "appeal", nor any request to confer with the appeal agent. At the time he sent the letter defendant had completed his third year at the University. He is obviously highly intelligent, and had he intended to request a personal appearance or an appeal, certainly he could have so stated. If the court were to make a *de novo* finding it would be that facially the letter clearly does not constitute a notice of appeal, despite its conformance with the regulation that requires merely a statement of the name and identity of the person appealing and also provides that the language of such notice shall be liberally construed and need not be in any particular form.

The court has reviewed the reported cases which have considered the issue of what constitutes a registrant's notice of appeal under § 1626.11(a). In most cases reviewed, the letter from the registrant contained the word "appeal". Chih Chung Tung v. United States, 142 F.2d 919, 920 (1st Cir.1944); Cox v. Wedemeyer, 192 F.2d 920, 921 (9th Cir. 1951); Davidson v. United States, 218 F.2d 609, 610 (9th Cir.1955), remanded on other grounds 349 U.S. 918, 75 S.Ct. 659, 99 L.Ed. 1251, reaffirmed, 225 F.2d 836 (1955); United States v. Dyer, 390 F.2d 611, 612 (4th Cir.1968); United States v. Olkowski, 248 F.Supp. 660, 663 (W.D.Wis.1965). In only one case was that word lacking, United States v. Hufford, 103 F.Supp. 859, 861 (M.D.Pa. 1952), and there the court's decision was based on the local board's minutes which reflected its decision that the registrant had in fact appealed. While the court need not and does not hold that the word "appeal" is essential, it is extremely doubtful whether the language of the defendant's letter of August 8, 1970, would be held by the local board to constitute a notice of appeal within the term of 32 C.F.R. § 1626.11(a), though it is clear of course that the letter reflects defendant's disagreement with and refusal to accept the result of the procedures accorded him by his local board.

The difficulty the court has with this case is that the letter was never in fact presented to the Local Board for its examination or opinion. The clerk merely placed it in the file. The court believes that the interpretation of a letter like that sent by the defendant even

though the court is clear as to how it would interpret it *de novo,* is a discretionary act which ought to be performed by the board rather than its clerk. At minimum, the clerk or executive secretary of the local board should be given advance criteria on which to base decisions regarding the construction of a letter claiming irregularities in classification or classification procedure, when such a letter arrives within the 30 day appeal period and indicates nonacceptance of a classification. While the Regulation does not specifically use the term "board" the language "liberally construed" appears, and it is clear that "construing" is a discretionary act and must rest with the board itself.

There is no indication in the file that the clerk of the local board checked with anyone as to the proper interpretation of defendant's letter. Certainly such a vigorous protest by a registrant deserves consideration by the local board as to whether it constituted a notice of appeal, or whether further action by AFEES or a reopening by the board was warranted. This court cannot presume to know what the board would have done had it been given the opportunity to consider the registrant's letter. It may have determined as would this court were the issue originally before it that no further action was warranted, but this can never be known since no such opportunity was given to the board by its clerk. As the United States Court of Appeals for the First Circuit cautioned in United States v. Stoppelman, 406 F.2d 127, 130 (1969) :

"  *  *  *  clerks file such communications without calling them to the board members' attention at considerable risk to the validity of subsequent proceedings."

The same court reaffirmed that view in United States v. Ford, 431 F.2d 1310, 1313 (1st Cir.1970). Congress created the system of local draft boards which have immense discretion as to the fate of registrants. At the same time it has severely restricted the scope of review of the decisions of the local boards by the courts and has created an extensive administrative appeals process designed to correct errors made by local boards. If this system is to work, local boards must be allowed to exercise that discretion. Otherwise, the check on possible arbitrary executive action, normally provided by the courts, is vitiated.

It should be emphasized that the court does not find here that the letter of August 8, 1970 was a notice of appeal or that the board should have reopened the defendant's classification. Rather it is held that where a registrant writes a letter containing a non-frivolous protest of his classification, the local board should be allowed to consider the letter to determine whether it warrants further action and amounts to an appeal. Failure to do so in this case was a violation of defendant's right to due process.

3. What has been said hereinabove renders unnecessary a consideration of whether defendant was denied due process for failure to receive a proper pre-induction physical examination and an x-ray consideration of his claimed Osgood-Schlatters disease and alleged bone chip in his knee.

The court is not unaware that defendant, in his selective service file at one point stated:

"I have developed complete contempt for the military and everything it stands for."

Nevertheless he was entitled 'to due process in all proceedings before the draft board and the failure of the clerk to refer defendant's letter to the Board so that it could exercise its discretion constitutes a denial thereof.

A separate order has been entered.