UNITED STATES of America

v.

John Wesley POTTER, III.

Crim. No. 74–383–T.

United States District Court,
D. Massachusetts.

Nov. 11, 1975.

Robert B. Collings, Asst. U. S. Atty.,
for United States.

Thomas G. Shapiro, Silverglate, Shapiro & Gertner, Boston, Mass., for defendant.

## MEMORANDUM

TAURO, District Judge.

Defendant is charged under an indictment with failure to report for alternate service, a violation of 50 U.S.C. App. §§ 456(j) and 462. Specifically, the Government alleges that Potter, having been classified 1-O (conscientious objector) by his draft board and under an obligation to perform twenty-four consecutive months of civilian work in lieu of induction into the armed services, failed to report as ordered to Massachusetts General Hospital (MGH) in Boston on November 20, 1972, to begin the required period of alternate service.

The defendant has moved to dismiss the indictment on the ground that the Government failed to perform an investigation of the circumstances surrounding this charge, which he claims is required by Selective Service Regulation 1660.9 (32 C.F.R. § 1660.9). The Government admits it never made the investigation, but maintains that, under the circumstances, an investigation was not required. This court disagrees and holds that the Government's failure to investigate the defendant's alleged failure to report for alternate service requires dismissal of the indictment.

The defendant received an alternate service order issued by his draft board on October 30, 1972 commanding him to report to MGH, 32 Fruit Street, Boston, at 9:00 A.M. on November 20, 1972. Defendant, however, went to MGH on November 10, 1972, and spoke with a senior personnel assistant who advised him to come back—apparently at some unspecified date—if he were "seriously interested" in obtaining employment. Defendant did not thereafter report to MGH on November 20, as ordered.[1]

On November 28, 1972 MGH returned SSS FORM 153 to Potter's draft board. This form had a section titled "STATEMENT OF EMPLOYER" designed to

allow the employer to report on registrants ordered to a particular job site. There are four printed responses on this form from which the employer may choose in reporting on the registrant:

Reported for work on _____

Reported but refused to accept the work offered to him

Failed to report and has not reported as of the date of this statement

Reported but not hired (Reason)

MGH checked the response "Reported but not hired," giving as its reason:

Mr. Potter appeared on 11–10–72 and was to come back if seriously interested in working at MGH. He has not returned as of this date.

Selective Service Regulation 1660.9(b) and (c) (32 C.F.R. §§ 1660.9(b) and (c)), at the time of the alleged failure to report for alternate service in this case, provided in pertinent part:

(b) Whenever the State director has reason to believe that a registrant refused or constructively refused employment, or was relieved for cause or left his job unjustifiably he will conduct an investigation which will include the following steps; obtain a statement from the former employer describing the circumstances, send such statement to the registrant; obtain a statement from the registrant in his defense, if he wishes to make one; and compile any other evidence he feels is relevant. He will then determine whether the termination was for cause or whether the departure was unjustifiable. If he determines that the registrant's departure was without justification he will report the registrant for prosecution.

(c) If, after completing the investigation in accord with paragraph (b) of this section, the State director finds no failure of the registrant to perform satisfactorily he will order

---

1. Defendant told an F.B.I. agent that he visited MGH three times looking for work, but there is no record of the two other visits.

The defendant does not contend, at any rate, that he reported at the time and on the date ordered.

the registrant to another job as quickly as possible . . . .

By its terms, SSR 1660(b) requires investigation when a registrant refuses or constructively refuses employment with his alternate service employer. At issue is the question of whether or not the defendant did refuse or constructively refuse employment.

The Government argues that this is a simple "failure to report" case and that the defendant could not have refused employment because a job was never offered to him.

The Government's position, however, fails to deal with the plain language of the regulation requiring investigation in the case of both an *actual* and a *constructive* refusal of employment. The fact that both terms are used indicates they are intended to cover different circumstances. Nothing in the record indicates an actual refusal. But the facts do warrant a conclusion of constructive refusal and this court so finds.

The defendant did report to the MGH albeit on a date prior to that indicated in the order. But SSR 1660.7(d) [2] contemplates and permits commencement of service prior to the date ordered. The MGH report that on November 10 defendant was told to report back if he wanted to work indicates that a job was available there for the defendant and that its availability was made known to him. In the employment market place this is how job offers are made. Nothing in the regulation requires a more precise or formal offer. Nor does the regulation limit the date for making an offer to that on the alternate service order. That defendant never returned warrants the inference that he chose not to accept this employment opportunity. While the facts may fall short of an actual or formal refusal of employment, they certainly add up to a *constructive refusal,* if that term is to be given any realistic interpretation.

Nothing in SSR 1660.8 [3] takes Potter's acts out of the scope of SSR 1660.-9(b). The Government contends that SSR 1660.8 and 1660.9 were designed to reach two different situations: the former provision would apply to situations where the registrant failed to report on the precise day ordered, omitting the requirement for investigation; and the latter provision would apply to situations where the registrant reported when ordered but refused to work, requiring investigation. A reading of SSR 1660.8, however, does not bear out this dichotomy. SSR 1660.8 never refers explicitly to failure to report. Its provisions are much broader, including in their scope "any registrant who knowingly fails or neglects to obey an order from his local board . . . or who constructively fails or neglects to obey such order . . . . ."

But many of the acts referred to in 1660.9—such as refusal of employment, unjustified departure from the job or termination for cause—also constitute failures to obey that are within the ambit of SSR 1660.8. There is, therefore, a broad area of overlap between the two regulations. The obvious relation between these two regulations is that SSR

---

2. This provision reads: "A registrant classified in Class 1–0 may take a job anticipating that it might later be approved as alternate service. If such a job is approved, the registrant will be credited with having performed acceptable service, when in fact he has performed such service, from the date he started the job, or the date he was classified in Class 1–0, whichever is later."

3. "Any registrant who knowingly fails or neglects to obey an order from his local board to perform alternate service contributing to the maintenance of the national health, safety, or interest in lieu of induction or who constructively fails or neglects to obey such order by his failure to comply with reasonable requirements of an employer shall be deemed to have knowingly failed or neglected to perform a duty required of him under the Military Selective Service Act. The registrant shall have failed to meet the standards or failed to perform satisfactorily if he did not meet the standards of performance demanded by the employer of his other employees in similar jobs."

1660.8 describes the parameters of the offense of failing to obey an order, while 1660.9 stipulates the procedure to be followed in certain instances before a putative offender is reported for prosecution.

Finally, the Government attempts to employ a minor inconsistency in the drafting of SSR 1660.9(b) to support its argument. The first sentence of the regulation refers to three situations: where a registrant refuses or constructively refuses employment, where he quits without cause, and where he is fired with cause. The second sentence, however, refers only to unjustified departures or terminations with cause. The Government argues, in effect, that because this second sentence drops the reference to refusal and constructive refusal of employment, the passage only applies to situations where a registrant has actually started working. There is evidence, however, that this omission may be simply poor drafting, since the third sentence of SSR 1660.9(b) drops the reference to termination with cause and mentions only unjustified departure. The most logical construction of the regulation is that it applies to all three situations mentioned in the first sentence. In any case the pertinent sentence of this regulation—the first, which establishes the investigation requirement—specifically includes cases of refusal and constructive refusal of employment.

 This court therefore concludes that defendant in reporting to MGH before the date of his assignment, in talking to MGH personnel, in receiving instructions to return if seriously interested in working, and in failing to return, at the very least "constructively refused employment" under SSR 1660.9(b). The State Director of Selective Service should have pursued the investigatory steps set out in this regulation before reporting the defendant for prosecution.

Having concluded that an investigation under SSR 1660.9(b) was mandated in this case, the remaining question is whether the failure to perform the investigation compels dismissal of the indictment.

 It is axiomatic that an administrative agency must follow its own regulations. *See, e. g., Morton v. Ruiz*, 415 U.S. 199, 235, 94 S.Ct. 1055, 39 L. Ed.2d 270 (1974), and cases cited; *United States v. Leahey*, 434 F.2d 7 (1st Cir. 1970). This general rule is especially important in Selective Service cases where the area of discretion of local boards is so broad and the scope of review correspondingly narrow. *See United States v. Spencer*, 369 F.Supp. 100, 101–102 (E.D.Wis.1974). In this Circuit, at least, in a prosecution for violation of the Selective Service statutes, where there is a violation of a regulation by the Government, the Government must prove beyond a reasonable doubt that there was no prejudice from this violation to the defendant. *United States v. Jacques*, 463 F.2d 653, 659 (1st Cir. 1972), *Steele v. United States*, 240 F.2d 142, 146 (1st Cir. 1956). A similar ruling was made by the Supreme Court in *Simmons v. United States*, 348 U.S. 397, 405–406, 75 S.Ct. 397, 99 L.Ed. 453 (1955). The Government in this case has made no attempt to demonstrate lack of prejudice.

More recently, the tendency in some cases has been towards a finding of prejudice *per se* in the case of the violation of any Selective Service regulation. *See United States v. Purcell*, 339 F. Supp. 366 (D.Mass.1972), where the court observed, discussing the developments from *Steele, supra*, that "with the passage of time several Circuits have gone still further . . . with regard to the protection of rights of defendants under the Selective Service law." *Id.* at 368, *citing United States v. Fisher*, 442 F.2d 109 (7th Cir. 1971) and *United States v. Davis*, 413 F.2d 148 (4th Cir. 1969). Judge, now Chief Judge, Caffrey in that case concluded that

. . . before the Government can successfully convict anyone of violation of the law, the Government agency itself must have fully complied

 

with all arguably material provisions of the law and any regulations promulgated thereunder.

339 F.Supp. at 369.

*See also United States v. Harding*, 461 F.2d 993 (9th Cir. 1972); *United States v. Ford*, 431 F.2d 1310 (1st Cir. 1970); *United States v. Trepp*, 332 F.Supp. 1331 (D.Minn.1971).

In addition to these considerations, special factors in the history and application of SSR 1660.9 demand strict adherence to its requirements. The core of the indictment for failure to report for alternate service is the interaction between the defendant and some unsupervised civilian bureaucrat—here, the MGH senior personnel assistant—who has little experience and possibly little interest in the technicalities of the Selective Service System. There are clearly enormous possibilities for confusion, mistake and even bad faith, unless the registrant is given, at some early stage, an opportunity to present his side of the story. The first major case to recognize this problem was *United States v. Cook*, 445 F.2d 883 (8th Cir. 1971). In *Cook* the Court of Appeals reversed a conviction for failure to perform alternate service on the ground that no determination was ever made as to whether the interruptions in that defendant's assigned employment were the result of some bad faith on his part or were outside his control. The Court of Appeals stated:

> If the Selective Service intends to prosecute young men for failure to perform their obligation to perform civilian service, we think, in the light of due process requirements, the Selective Service System must adopt well defined administrative rules and regulations which articulate the standards of performance and provide for appropriate notice of violations of those standards.

*Id.* at 890–91.

Less than five months after the *Cook* decision SSR 1660.9 was promulgated. *See* 36 Fed.Reg. 23385 (Dec. 6, 1971).

The circumstances of this case dramatically exemplify the need for such regulations. We know from the Employer's Statement that defendant was told to return if he were "seriously interested" in work. This remark, however, suggests more questions than it satisfies. Certainly more words must have been spoken in this interchange, and they would be critical in assessing what really happened at MGH on November 10, 1972. Was Potter, for example, discouraged from working at MGH even though a job was available to him? Was he perhaps told that he did *not* have to return on November 20? Was he misled into the belief that the availability of a job would depend on his "seriousness," and not on the Board order? These are among the uncertainties that would be resolved by investigation and underscore the wisdom of requiring such an inquiry before prosecution is initiated.

The Government made the rules and must follow them. Its failure to do so requires that the indictment now outstanding against the defendant be dismissed.