**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Patrick James FISHER, Defendant-
Appellant.**

**No. 18413.**

United States Court of Appeals,
Seventh Circuit.

April 14, 1971.

Irving L. Fink, Edward W. Harris, III, Indianapolis, Ind., for defendant-appellant.

Stanley B. Miller, U. S. Atty., William W. Knowles, Indianapolis, Ind., for plaintiff-appellee.

Before CASTLE, Senior Circuit Judge, KILEY and PELL, Circuit Judges.

PELL, Circuit Judge.

Following a bench trial, defendant Patrick James Fisher was found guilty of failing and neglecting to comply with an order of his local Selective Service Board to report for and submit to induction into the armed forces of the United States, in violation of 50 U.S.C. App. § 462. He was sentenced to imprisonment for a period of 42 months. From the judgment of conviction and sentence, defendant appeals.

Fisher first registered with the Selective Service System in 1963. From that time until December 1, 1967, he was three times classified II–S as a student, and twice classified I–A when he temporarily interrupted his studies. He graduated from college in August 1967.

On December 1, 1967, Fisher filed a Current Information Questionnaire (SSS Form 127) advising his local board of his graduation and of the fact that he was in the custody of an unspecified criminal court "awaiting trial." On December 13, 1967, he was again classified I–A.

On January 15, 1968, Fisher's board ordered him to report for induction. This induction notice was canceled by the board on February 12, 1968, after receiving further information from Fisher concerning the allegedly pending criminal proceeding.

The next reference we find in the record to the pending criminal proceeding is in a Current Information Questionnaire executed by Fisher in October 1968, in which he checked on the form that he was not being retained in the custody of a court of criminal jurisdiction. In the interim, however, this phase of Fisher's status seems to have had no significance to any one.

About February 19, 1968, Fisher requested by letter that his board reopen his classification and furnish him the

form for conscientious objector status (SSS Form 150). He also stated that he intended "to ask for a IAO classification." He completed and returned the Form 150 on March 4, 1968. On the form, by his signature, he indicated that not only was he conscientiously opposed to participation in war in any form but that he was further conscientiously opposed to participation in noncombatant training and service in the armed forces. He therefore claimed exemption from both combatant and noncombatant training and service in the armed forces. He had crossed out that part of the form which would have claimed exemption from only combatant training and service. The I–A–O classification would have been the appropriate classification for exemption from only combatant training and service.

█ In response to some of the questions on the Form 150, Fisher transmitted a separate 22 page longhand manuscript, which he stated had taken him better than a month to prepare. While it appears to be a somewhat rambling dissertation on his beliefs with frequent philosophical overtones, nevertheless, it would appear to present a prima facie case for the conscientious objector status. *See* Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970); Whitmer v. United States, 348 U.S. 375, 381, 75 S.Ct. 392, 99 L.Ed. 428 (1955).

On March 20, 1968, he requested an appearance before his local board concerning his conscientious objector application. The board granted his request and advised him that he might "make a personal appearance" on April 24, 1968.

Precisely what occurred at Fisher's meeting with his board is the subject of some dispute as is the exact legal nature of the action taken by the board following the meeting. Without at this point going into those disputes, it can be said that the ultimate result was that Fisher was notified that he was classified I–A and not I–O, conscientious objector, nor I–A–O, conscientious objector available for noncombatant service.

Following the unsuccessful exercise of his appeal rights within the Selective Service System, Fisher was ordered to report for induction on January 7, 1969. He appeared at the induction center but refused to take the symbolic step forward for induction. The instant indictment and conviction followed.

Fisher first asserts that he was denied the services of a Government Appeal Agent in violation of his right to procedural due process. Under Selective Service System Regulations, an Appeal Agent is to be appointed for each local board with the duty, among others, to appeal "from any classification of a registrant by the local board which is brought to his attention and, in his opinion, should be reviewed by the appeal board." 32 C.F.R. 1604.71. The regulations require the posting of the name of the Appeal Agent in a public area of the local board office. 32 C.F.R. 1606.62(b).

Fisher contends that the evidence is clear that he desired the services of an Appeal Agent and was denied those services by misleading information given him by the clerk of his local board. Fisher testified that after the April 24 meeting with his local board he telephoned the clerk of the board, May Schort. She told him that he had been classified I–A, that nothing had been added to his file, and that he could appeal. He asked who the Appeal Agent was and May Schort answered that it was Mary King. In fact, Mary King was not an Appeal Agent but was the supervising Executive Secretary of all local boards in the county. The Government did not call May Schort, who was no longer a Selective Service employee, to testify to her conversation with Fisher.[1]

█ While the evidence is to be viewed on this appeal in the light most

1. That May Schort could have been unaware of who the Appeal Agent was seems plausible in light of the testimony of the board chairman that, although he had been a member of the board for 15 years and its chairman for 8 years, he did not know who the Appeal Agent was.

favorable to the Government's position, the district court did not purport to find a lack of credibility in Fisher's testimony that May Schort had misinformed him as to the identity of the Appeal Agent. The testimony on this point stands unrebutted in the record before us and we must assume it is correct.

The notice of the I–A classification had been mailed to Fisher on April 24, 1968, together with a covering "Advice of Right to Personal Appearance and Appeal," (SSS Form 217) which stated *inter alia*:

"* * * each local board has available a Government Appeal Agent to aid you with a personal appearance, an appeal, or any other procedural right. The Appeal Agent or his representative will give you legal counsel on Selective Service matters only at no charge.

"If you should desire a meeting with him, this office will arrange a time and place for such a meeting upon request."

A similar notice had been sent to Fisher on the occasion of his December 13, 1967, classification as I–A.

Both Fisher and Mary King testified that he had talked with her by telephone concerning the taking of an appeal. She recalled no details of the conversation but apparently basing her testimony on what she ordinarily did, said she would have told him that he only had to write a letter, address it to his local board and mention the word "appeal" and his complete file would be forwarded to the appeal board. This was substantially the testimony of Mary King. However Fisher stated that she told him she knew of nothing that had been added to his file, that it would not do any good to go through the file since only the vote had been recorded and it was not necessary to rebut the decision of the local board in taking an appeal.

After his appeal failed, Fisher again contacted Mary King concerning what further action he could take and she advised him to contact the State Director.

As late as December 10, 1968, Fisher in a letter to the State Director referred to his Appeal Agent. He testified that this reference was to Mary King. He further testified that he first learned who his true Appeal Agent was in mid-December 1968, after his appeal rights were exhausted.

Fisher also asserts that the Government failed to prove that the name of his Appeal Agent was posted at his local board as required by 32 C.F.R. 1606.62 (b). The only testimony on the subject was by Mary King:

Q. Now, in your office, is the name of the Government Appeal Agent posted anyplace?

A. Yes, it is posted on the bulletin board.

Q. Did Mr. Fisher ever ask you who the Government Appeal Agent was?

A. Not to my knowledge. Mr. Fisher has read the list of names posted on the bulletin board. At least, he has looked at that bulletin board.

Q. You have seen him looking at the bulletin board?

A. Yes, sir.

Fisher points out that this testimony as to the posting relates to the time of trial and in no way shows that the required list was on the bulletin board before or during the time he was appealing nor that he looked at the bulletin board before or during such time.

The trial court found "incredible the testimony that [defendant] believed [Mary King] to be the appeals agent. * * *" The court relied upon the fact that the agent's name was posted on a bulletin board with which Fisher was familiar and the fact that defendant had received two communications from his local board signed by Mary King as clerk of the board. The court found as a fact that defendant was not misled.

The inference drawn by the district court that Fisher was not "misled" rather than negating the unrebutted testimony of Fisher that he was misinformed

as to the identity of the Appeal Agent would seem affirmatively to lend credibility to this particular phase of the defendant's testimony. "Misled" in ordinary use connotes some factor which achieved that result. Here it was the misinformation which the court, not denying it existed, nevertheless, because of other operative factors, found did not achieve the result of misleading.

■ Based on all the evidence detailed above, we are forced to conclude that the finding of the district court on the broader issue of Fisher being misled was clearly erroneous and must be set aside. Rule 52(a), Fed.R.Civ.P. While there is some supportive evidence, and although we recognize the opportunity of the trial judge to observe the witnesses, nevertheless, we are left with "the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

The record is not controverted that defendant did seek advice from Mary King and did rely upon that advice in prosecuting his appeals. We cannot imagine a plausible reason for his having thus persisted in consulting a secretary, rather than the lawyer-Appeal Agent, had he known her true capacity, particularly in view of his obvious disinclination to engage in any form of Selective Service prescribed activity.

The facts relied upon by the district court to infer such knowledge are inadequate in the face of the whole record. The forms referred to by the trial court were signed by Mary King over the pre-printed designation "(Member or clerk of Local Board)." [2] Mary King was apparently neither. She testified that she had been the Supervising Executive Secretary since 1954. Fisher's file contained letters signed by May Schort, two on the same day, as Executive Secretary of Board 205, as Clerk, and as Assistant Clerk. Thus, it appears that the practice

of Fisher's local board was either to allow one person to hold several positions or to pay little attention to the position designation when signing pre-printed forms. In either event, the fact that defendant received two documents signed by Mary King as "(Member or clerk of Local Board)" is not sufficient when considered in light of the whole record, to show that he must have realized she was not the Appeal Agent.

We have some difficulty in accepting the narrow interpretation of Mary King's testimony vis-à-vis the bulletin board as urged by Fisher. Technically speaking, she did use the present tense "is" which could be construed to refer only to the time at which she was actually testifying. Of course, if one desired to pursue the matter to its logical extreme, it could be said that she did not and could not know of her own knowledge whether the name was posted at the time she was testifying because she was in the courtroom and not in her Selective Service office. We think in the absence of challenge at the time of her testimony, it was susceptible of indicating that at the material times the name had been posted and that Fisher had looked at the bulletin board during such period of time.

It, of course, does not necessarily follow that Fisher thereby knew the identity of the Appeal Agent. Given the evidence of affirmative misinformation, the equivocal at best testimony of Mary King will not suffice to show that Fisher knew the true identity of his Appeal Agent and ignored him in favor of seeking advice from Mary King. See United States v. Schwartz, 143 F.Supp. 639, 640 (E.D.N.Y.1956).

Even assuming that the list was posted at the relevant time, we are not convinced that this technical compliance with the regulation would overcome the effects of the affirmative giving of erroneous information by the clerk of the board.

In United States v. Goodman, 68 C.R. 179, 1 SSLR 3239 (N.D.Ill.1968), formal

---

2. We note that the brief of the Government erroneously states that these forms ■ indicated Mary King's capacity to be Supervising Executive Secretary.

notice of the right to appeal was sent to defendant as required by the regulations. However, when he went to the clerk of his board to request orally an appeal, she told him he could not appeal. In holding that defendant had been denied his right of appeal, Judge Will said:

"While these observations are formally correct, the simple answer to them is that the Local Board should not only be required to adhere to the formal requirements of the regulations, but it should also *be required to refrain from erroneous and prejudicial representations to a registrant.* It is not unreasonable for a registrant to seek advice and information concerning his classification and rights under the Selective Service Regulations from the Local Board. Indeed, it should be noted that the notice of classification form, Selective Service Form 110, as revised May 25, 1967, specifically states: 'FOR INFORMATION AND ADVICE GO TO ANY LOCAL BOARD'. Certainly, then, a registrant has a right to rely on the representations of the Board or its agent and the Board has a duty to avoid or refrain from prejudicial representations to a registrant."

Thus, it is our conclusion that May Schort did misinform Fisher concerning the identity of his Appeal Agent and that he was in fact misled by this erroneous information. There remains only the question of the legal effect of these facts.

■ In its brief, the Government concedes that the Selective Service System has an affirmative duty not to mislead and to give clear and correct information and advice when requested to do so. *See* United States v. Hosmer, 310 F.Supp. 1166, 1171 (S.D.Me. 1970), and cases cited therein. We also note that Local Board Memorandum No. 82, SSLR 2199, issued by the Director of Selective Service on March 6, 1967, and amended July 27, 1967, provides, in relevant part:

"If the registrant desires to consult the Government Appeal Agent, he should notify the local board clerk, who will arrange a time and place for such a meeting."

The foregoing, of course, is nothing more than the same advice contained in SSS Form 217, which had been sent to Fisher. Thus, when Fisher called May Schort, he was following the exact procedure established by the Selective Service System. Under that procedure, May Schort had not only the duty not to mislead Fisher but also the affirmative duty to arrange a meeting for him with his Appeal Agent.

■ We think that the failure of the board to fulfill these duties has denied Fisher procedural due process and precludes his conviction under the instant indictment. As stated by the Fourth Circuit in reference to the similar duties imposed by Local Board Memorandum No. 82 prior to its amendment:

" * * * the failure of the board to inform Davis that a Government Appeal Agent was available to advise him on matters relating to his legal rights, including his right of appeal, and that the board clerk would arrange a meeting with the Appeal Agent if Davis desired it, denied Davis a substantial · right, the value of which is not now ascertainable. We cannot assume that the advice of an Appeal Agent would have been worthless to Davis, and without that assumption we cannot hold the failure to advise him harmless." United States v. Davis, 413 F.2d 148, 151 (4th Cir. 1969).

The Government, however, contends that the mere failure of the board to comply with these duties does not amount to a denial of due process absent a showing by defendant that he was prejudiced thereby. It relies upon our opinion in United States v. Manns, 232 F.2d 709 (7th Cir. 1956).

In *Manns*, the local board failed to appoint, and post the name of, an "adviser for registrants," as then required by regulation. However, it did inform defendant that he could consult with the advisers for registrants appointed for other boards in the same office. Defend-

ant also had available to advise him an Appeal Agent appointed for his board. He did not seek advice from either of these sources and admitted that he had no need for their advice. Upon the appeal of his I–A classification, he was reclassified I–O by the appeal board.

In short, *Manns* involved at most a technical violation of regulations which by the defendant's admission neither prevented him from obtaining expert counsel nor deprived him of the only classification to which he was entitled. Furthermore, *Manns* clearly held that if some prejudice had been shown, the convictions could not have been upheld. *Manns, supra,* 232 F.2d at 711. The instant case is thus significantly different from *Manns.* Here we have found that the board's violation of its duties did in fact deprive Fisher of the assistance of an Appeal Agent, which he sought and desired. This alone establishes prejudice. *Davis, supra,* 413 F.2d at 151.

██ But, even if it did not, it would at least shift to the Government the burden of showing the absence of prejudice. Because the defendant in *Manns* admitted the absence of prejudice, the question of who has the burden on that issue was not considered. It seems clear, however, that once the defendant establishes the deprivation of a procedural right of the magnitude of the right to consult an Appeal Agent, the burden is upon the Government to prove the absence of prejudice beyond a reasonable doubt. Simmons v. United States, 348 U.S. 397, 405–406, 75 S.Ct. 397, 99 L.Ed. 453 (1955); Steele v. United States, 240 F. 2d 142, 146 (1st Cir. 1956). No such showing was made here.

In fact, Fisher introduced affirmative evidence that he was prejudiced in his appeal by the deprivation of the assistance of an Appeal Agent. Since such prejudice to Fisher's appeal right would constitute an independent ground for reversal, a discussion of the issue is not inappropriate.

The alleged prejudice arose out of the insertion into Fisher's file of a short memorandum by the board chairman following Fisher's appearance before the board on April 24, 1968. That memorandum reads as follows:

"4/28/68

"Mr. Fisher appeared before Local Bd. #205. In the interrogation Mr. Fisher stated that until he received his IA classification and ordered for induction he was confident that he would be able to '*Dodge the Draft*'—at this time he decided to ask for a Conscientious Objector Classification.

"He also stated that under 'Duress he would serve as a IAO—*i. e.,* in the U. S. Army as a Non Combatant Status.'

/s/ B. L. Stonecipher"

As set out above, the evidence was that both May Schort and Mary King told Fisher that nothing had been added to his file following his appearance before the board. He did not discover the existence of the memorandum until after the completion of his appeal. Fisher argues that had he had the assistance of an Appeal Agent, the Agent would have studied his file and discovered this memorandum. This, we think, is quite likely and the Government does not contend otherwise.

We recognize, but do not attach significant importance, to the fact that Fisher admitted in his testimony that he made a statement to the board concerning draft dodging. The admission was accompanied by the assertion that the statement was "qualified by a lot of other things I said there immediately following that statement." The Stonecipher memorandum does not set forth any such qualifying or explanatory remarks.

██ Nor does the Government deny that Fisher's right to due process would be violated by the submission to the Appeal Board of adverse new material of which he was unaware due to the failure of the local board to fulfill its duties. "[T]he right to file a statement before the Appeal Board includes the right to file a meaningful statement, one based on all the facts in the file and made with awareness of the recommendations and

arguments to be countered." Gonzales v. United States, 348 U.S. 407, 415, 75 S.Ct. 409, 414, 99 L.Ed. 467 (1955). See also United States v. Owen, 415 F.2d 383, 388–389 (8th Cir. 1969).

In Simmons v. United States, 348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453 (1955), the Court dealt with the problem of a registrant claiming conscientious objector status who was not furnished with a copy of an FBI report prior to his appearance at a hearing before the Department of Justice as then required. After reaching the conclusion, similar to that of Gonzales, supra, that the hearing was "lacking in basic fairness" since the registrant was not fully informed of the adverse information in his file, Simmons, supra, 348 U.S. at 405, 75 S.Ct. 397 the court turned to the contention of the Government that no prejudice had been shown. It concluded that the argument could be "readily disposed of":

> "Petitioner has been deprived of the fair hearing required by the Act, a fundamental safeguard, and he need not specify the precise manner in which he would have used this right—and how such use would have aided his cause—in order to complain of the deprivation." Id. at 406, 75 S.Ct. at 402.

Thus, we think Fisher was required, at most, to show that the memorandum of the board chairman was adverse to him and that he was justifiably unaware of its insertion into his file.

That Fisher was "justifiably unaware" appears clear; however, the finding of the district court, and the argument of the Government, center on the proposition that the memorandum was not adverse new matter. The red flag implicit in the attributed statement "Dodge the Draft," standing unqualified, appears to us to present a persuasive prima facie situation of adversity to Fisher's appeal.

The Government argues that the memorandum is not new matter since it merely summarizes what Fisher said orally at his appearance before the board. But we think it is obvious that when such statements are reduced to writing and inserted into the file, they become new matter in the sense that they thus become available to the Appeal Board. The statements of a registrant to his local board may be expected to have critical bearing on the decision of the Appeal Board before which he does not personally appear. Thus, the dictates of a fair appeal necessitate his being advised if such information is being made available to the Appeal Board. See Gonzales, supra, and Simmons, supra.

We find in the Selective Service Regulations themselves support for the proposition that a registrant has a right to know what is placed in his file concerning an appearance before his local board. The regulations in effect preclude the local board from inserting in a registrant's file "information presented orally by the registrant or in his behalf at a personal appearance. * * * " 32 C.F.R. 1626.13(a). The regulations further specifically require that any new information presented orally at a personal appearance " * * * shall be summarized in writing by the registrant and * * * shall be placed in the registrant's file." 32 C.F.R. 1624.2(b). The regulations indicate a positive and pointed effort to insure that nothing concerning the oral statements of a registrant is placed in his file without his awareness and approval. Here Fisher knew that he had inserted no written summary and, in light of 32 C.F.R. 1626.13(a), he had the right to assume that none would be inserted by his board.

We note that if the Stonecipher memorandum is viewed as a summary by the board of the oral statements of Fisher, its insertion into his file would appear to be a violation of 32 C.F.R. 1626.13(a), supra. However, it is equally possible to view the memorandum as a statement of the board's reasons for rejecting the conscientious objector claim as required by recent decisions of this and other circuits. See United States ex rel. Hemes v. McNulty, 432 F.2d 1182 (7th Cir., 1970); United States v. Lemmens, 430 F.2d 619

(7th Cir., 1970), and cases cited therein. While the memorandum is not a model of such a statement, given the present posture of this case, we may assume, as the Government contends, that it was intended to serve that purpose. However, this merely reinforces the conclusion that it was critical new matter of the type of which Fisher needed to know in preparing his appeal.

Finally, the Government asserts there can be no prejudice since the memorandum is an accurate summary and if it is adverse, "this is because the terminology used by the defendant and information provided by him at the hearing was adverse." This begs the question, and the wrong question at that.

It is irrelevant whether the memorandum insofar as it went was accurate. It is plainly damaging, and *Gonzales* and *Simmons* require that Fisher be given an opportunity "to explain it, rebut it, or otherwise detract from its damaging force." *Simmons, supra,* 348 U.S. at 405, 75 S.Ct. at 401–402. Whether or not the memorandum was accurate, its insertion into his file would have made it advisable, if not imperative, for Fisher to address himself to it on an appeal. Unless he knew of its existence, he could not do that.

Furthermore, even if accuracy were the question, Fisher's position is that the memorandum does not accurately set out what transpired at the meeting with his board. He contends that the true import of his statements to the board was that although he was confident that he could continue to avoid the draft, he was no longer as a matter of conscience able to do so and had decided to work within the system.

In a sworn statement in December 1968, contained in Fisher's Selective Service file but prepared subsequent to the ruling by the Appeal Board, Fisher stated in part the following: "When queried about accepting non-combatant status, I told the board that I did not feel in conscience that I could apply for I–A–O because I did indeed deserve the I–O classification. I said I could not allow myself to be put in a position wherein I would not be allowed the free exercise of my own moral judgment. But because my main objection to military service is in the question of killing, I would accept I–A–O."

Fisher's account of what occurred at the meeting is not patently incredible and his evidence to support it is not frivolous. Had he known of the memorandum, he could have contested its accuracy before the Appeal Board and presented his version. It is not for us to say at this point that the Appeal Board would have rejected completely Fisher's account of the meeting.

Thus, we conclude that Fisher was prejudiced by being kept unaware of the existence of the memorandum and that such prejudice was of sufficient magnitude to deny him the right to a fair hearing before the Appeal Board.

In connection with a separate issue which we do not reach in view of our decision of other issues, the Government contends that Fisher's classification was not reopened following the April 24 appearance before his board. While the Government does not argue the point, it is clear that if such were the case, Fisher would have no right to an appeal following the April 24 appearance. Compare 32 C.F.R. 1625.4 with 32 C.F.R. 1625.13 *and see* 32 C.F.R. 1626.2(a); Local Board Memorandum No. 52(3), SSLR 2177–78.

In such case, of course, there could be no argument of prejudice to his right of appeal. However, the record is plain that Fisher's board did reopen his classification following the April 24 appearance. Suffice it to say that there would be no other explanation for the board sending Fisher, as it did, a notice of his right to appeal following that meeting unless there had been a reopening and reclassification.

■ The Government argues not only that the local board did not reopen but that it had no power to reopen since Fisher's conscientious objector claim was

made after his induction notice was issued. It relies on 32 C.F.R. 1625.2 prohibiting such reopenings absent a change in circumstances "over which the registrant had no control." We note first that the induction order relied upon by the Government was canceled on February 12, 1968, and was of no effect at the time Fisher's claim was made. Further, even if it had still been in effect, we have recently held that a claim of conscientious objector status may result from a change of conscience over which the registrant has no control and may be raised following the issuance of an induction order if it first crystallized following such issuance. Given the cancellation, however, it was not necessary for the board to confront this issue and make the findings required by 32 C.F.R. 1625.-2. United States v. Nordlof, 440 F.2d 840 (7th Cir. 1/5/71).

Fisher also challenges the composition of his local board. Section 1604.52(c) of the regulations, as it read when Fisher's classification was before his board, provided that members of local boards shall " * * * if at all practicable, be residents of the area in which their local board has jurisdiction." 32 C.F.R. 1604.52(c).[3] These words were deleted from the regulations by Executive Order 11555, issued September 2, 1970. 35 Fed.Reg.No.175, p. 14191, 3 SSLR 26. Normally, of course, a registrant is entitled to the benefit of the regulation as it read when he was being processed by the Selective Service System. However, in the instant case, consideration of this issue is unnecessary since Fisher's conviction must be reversed on other grounds and since the repeal of the "area of jurisdiction" provision renders any discussion of it irrelevant in any future consideration by the board of Fisher's status.

Other errors are asserted by Fisher as the basis for reversal but they are not of such a character as will be likely to reoccur in further proceedings involving Fisher and his Selective Service board. Therefore, we do not address ourselves to them.

We have based our decision on the issue of procedural due process and not on whether Fisher should or should not have been classified other than I–A. Nothing herein should be deemed by the board in future processing of Fisher's draft status as expressing any opinion on what his proper classification should have been at the times in question or what it should hereafter be.

For the reasons hereinbefore given, the judgment of conviction and sentence is reversed. The cause is remanded with directions to dismiss the indictment.

Pursuant to the Criminal Justice Act of 1964, Irving L. Fink, a member of the Indiana Bar, was appointed to represent defendant on this appeal. He was assisted by Mr. Edward W. Harris, III. We express our appreciation for their able and effective service to their client and the court.

Reversed and remanded.

3. The district court did "find that it would have been practicable for the President to have appointed board members who were residents of the area." The court ruled, however, that the eligibility and qualifications of Selective Service board members may not be challenged in a criminal proceeding.