UNITED STATES of America, Plaintiff,

v.

Ronald Charles AUGER, Defendant.

No. CR–71 1111.

United States District Court, N. D. California.

Jan. 7, 1972.

---

Lawrence Marquette, Singer, Marquette & Osterhoudt, San Francisco, Cal., for defendant.

James L. Browning, Jr., U. S. Atty., John D. Link, Asst. U. S. Atty., San Francisco, Cal., for plaintiff.

## MEMORANDUM OPINION

ZIRPOLI, District Judge.

Ronald Charles Auger was indicted for failing to submit to induction into the armed forces in violation of 50 U.S.C. App. § 462.

Defendant registered with the Selective Service System on December 21, 1966. He was subsequently deferred because of his student status. On July 30, 1969, the defendant requested SSS Form 118 (Dependency Questionnaire), and, on August 13, 1969, he returned the completed form, in which he presented a claim for a III–A deferment on the basis of "extreme hardship" to his wife and infant child. On September 16, 1969, the defendant was classified I–A and ordered to report for a pre-induction physical examination. The defendant filed a timely appeal. After seeking additional information regarding the hardship claim, the local board cancelled the order to report for a pre-induction physical and classified the defendant III–A until October 20, 1970.

On September 18, 1970, the defendant's local board requested him to fill out another Dependency Questionnaire. The defendant returned the completed form on September 21, 1970. On October 15, 1970, the local board classified him I–A. The board did not inform the defendant of its reasons for terminating his III–A deferment, nor did the board enter any statement of its reasons for its reclassification action in the defendant's Selective Service file. The defendant appealed. On November 24, 1970, the state appeal board affirmed the local board's denial of defendant's III–A claim, without stating any reasons for its decision. Although the defendant continued to submit additional evidence in support of his claim, the local board ordered him to report for induction on May 25, 1971. He reported, but refused to submit. This prosecution followed.

The defendant moved for judgment of acquittal on the grounds that there was no basis in fact for denial of his III–A claim and that the failure of the local board and the appeal board to state reasons for their actions was prejudicial.

32 C.F.R. § 1622.30 provides that a registrant whose induction into the armed forces would result in extreme hardship to his dependents shall be granted a III–A deferment, but the regulation does not provide standards for evaluating claims of "extreme hardship." In 1969, the registrant presented information which established that he was married and had an infant daughter, that he was employed as a general laborer at a salary of $116.00 per week, that he owned an automobile, and that his wife was not employed. The defendant also indicated that two of his relatives could contribute to the support of his wife and child. In response to the board's request for additional information, the defendant submitted an itemized list of his monthly obligations, his 1968 income tax forms, a statement that his wife could not work because she took care of their child, and the details of his automobile ownership. The defendant's parents and his wife's mother submitted letters attesting to their inability to support his wife and child. On the basis of this information, the local board classified the defendant III–A.

In 1970, the registrant presented information which established that he was married and had an infant daughter, that he had two jobs at a combined salary of $130.00 per week, that he owned an automobile, and that his wife was not then working, although she had worked during the course of the preceding year. Without requesting any other information, the local board reclassified the de-

fendant I–A on the basis of the information before it.[1]

Certainly there are some differences between the contents of the two applications. In 1969, it appeared that defendant's wife could not work because of her child rearing obligations; in 1970, the defendant's application revealed that his wife had worked, although for what length of time and under what conditions the record does not disclose. This change in the registrant's circumstances arguably weakened his claim of "extreme hardship." On the other hand, in 1969, the defendant's file indicated that at least one of his relatives was able to contribute to the support of his dependents; in 1970, although his application revealed the existence of relatives with substantial income, the defendant noted that the maximum available from them was $50.00.

The court is aware that its task is "to search the record for some affirmative evidence to support the local board's overt or implicit finding that a registrant has not painted a complete or accurate picture of his activities." Dickinson v. United States, 346 U.S. 389, 396, 74 S.Ct. 152, 98 L.Ed. 132, 157 (1953). To the extent that the changes in the defendant's situation may have undermined his claim, the board might appropriately rely on them as a basis in fact for discontinuing the III–A classification. However, mere "suspicion or speculation" will not suffice. *Id.* at 397, 74 S.Ct. 152. The defendant's statement that his wife had worked briefly during the preceding year, without more, permits only "speculation" that she could work to support herself and her child in the defendant's absence; the existence of relatives with substantial income whom the defendant stated could not contribute to his family's support permits only "suspicion" that they could. Such conjectural conclusions do not provide an appropriate basis in fact to enable either the Selective Service System or the courts to conclude that a registrant is not entitled to the classification he seeks.[2]

At trial, the government contended that defendant failed to state a prima facie case and that, as a result, the board was not required to give reasons for its action. Needless to say, defendant took a different view. Notwithstanding the variations between the defendant's two applications, this court is unable to say that defendant's 1970 application is insufficient as a matter of law to state a prima facie claim for a hardship deferment when compared with defendant's 1969 application, which was granted.[3]

---

1. Although the issue was not raised at trial, it appears to the court that the defendant was eligible for a III–A classification on the grounds of dependency, without regard to hardship. 32 C.F.R. § 1622.30(c) provides that any registrant who prior to the effective date of the amendment of the III–A regulations submitted information to his local board establishing his eligibility for deferment on the grounds of fatherhood under regulations in effect prior to such date, or who is so classified prior to such date, and who continues to maintain a bona fide family relation in their home with his child or children, shall be placed in Class III–A. The defendant informed his board that his wife was pregnant on October 24, 1968, and his current information questionnaire, submitted on July 30, 1969, established that he was living with his wife and child in their home. Since defendant submitted information establishing his entitlement to a paternity deferment prior to April 23, 1970 when it was abolished, the defendant quite probably should have been continued in Class III–A simply because of fatherhood. See Local Board Memorandum No. 105.

2. In such circumstances, the board might appropriately exercise its powers to question the registrant under oath, subpoena witnesses, and require both to produce documents. 32 C.F.R. § 1621.15.

3. Neither is the court able to say that it would be sufficient as a matter of law, if standing alone. The most the court is able to say is that "review of the record discloses that the facts before the Board are not in dispute, and that there is no significant difference between the facts before the Board when it classified

The absence of recognized standards for evaluating the prima facie sufficiency of such claims enhances the difficulty of the courts. The local board *may* have decided that the defendant failed to state a prima facie case; or it *may* have decided that the facts presented stated a prima facie case, but, upon consideration on the merits, did not warrant the requested classification. On the basis of the record before it, the court finds that a comparison of the two applications does not permit the court to conclude with any certainty what the board did in fact decide.

The issue before this court, then, is under what circumstances the local board and the appeal board are required to give reasons for their denial of a requested classification.

■ United States v. Haughton, 413 F.2d 736, 739 (9th Cir. 1969), stands for the proposition that the local board must state the reasons for denial of a requested classification when a registrant has met the statutory criteria for that classification or, to put it another way, placed himself prima facie within the statutory exemption. "Otherwise a court cannot determine whether a board's denial of a requested classification was based on a belief that the registrant's statements, even if true, did not entitle him to the classification, or on the reasonable disbelief of certain allegations necessary to the registrant's *prima facie* case." In *Haughton*, the court of appeals reviewed the registrant's application for conscientious objector status, *id.* at 739–742, and concluded that it was prima facie sufficient. Since the board did not state the basis for its denial, the court could not determine whether denial was proper.[4] However, *Haughton* involved a claim of conscientious objection. The

threshold question this court must resolve is whether the rationale of that case should apply to a claim of extreme hardship.

*Does the Haughton rationale apply to III–A claims?*

■ In conscientious objector cases, the elements of a prima facie claim are relatively definite. Section 6(j) of the Military Selective Service Act of 1967, 50 U.S.C. App. § 456(j) provides:

Nothing contained in this title shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form.

*See also* 32 C.F.R. § 1622.14 and Local Board Memorandum No. 107, "Criteria for Classification of Conscientious Objectors" (July 6, 1970). Thus, a registrant must show that he is conscientiously opposed to war in any form, Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971), that his opposition is based on religious training and belief, as defined in Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970); United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), and that his objection is sincere. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955). Having done so, a registrant has stated a prima facie case and the local board must give its reasons for denial of the claim.

The elements of a prima facie claim for deferment by reason of extreme hardship to dependents are somewhat more

[defendant] in III–A in [1969] and when it reclassified him in I–A in [1970]." Lewis v. Secretary, Department of the Army, 402 F.2d 813, 818 (9th Cir. 1968).

4. United States v. Kember, 437 F.2d 534, 536 (9th Cir. 1970), cert. denied 402 U.S. 923, 91 S.Ct. 1392, 28 L.Ed.2d 662

(1971), holds that "the appeal board as well as the local board [must] state its reasons for denial of a conscientious objector claim where the application therefor is prima facie sufficient, unless the appeal board's reasons can be determined from the agency record with reasonable certainty."

elusive. Section 6(h), 50 U.S.C. App. § 456(h), provides:

"The President is also authorized, under such rules and regulations as he may prescribe, to provide for the deferment from training and service in the Armed Forces (1) of any or all categories of persons in a status with respect to persons (other than wives alone, except in cases of extreme hardship) dependent upon them for suppot which renders their deferment advisable . . . ."

32 C.F.R. § 1622.30 limits the availability of this deferment to registrants whose induction would result in "extreme hardship" to dependents. Beyond this subjective criterion, it appears to the court that local boards are left to their own devices in evaluating such claims.

■ Although *Haughton* applies in terms only to a conscientious objector claim, this court perceives no reason why its rationale should not in logic apply to a claim of extreme hardship. The *Haughton* court noted the special circumstances surrounding conscientious objector claims and concluded: "These factors make the function of the local board and the reviewing court difficult. Part of this difficulty will be removed if the local board specifies the reasons for its action. A Court can then readily determine the propriety of the action it is asked to review." *Id.* 413 F.2d at 742. Special circumstances also surround hardship claims. Although the information requested on the Dependency Questionnaire is straightforward, the interpretation of that information is not. The ultimate determination the board must make is not simply a matter of applying a rule of law to the facts the registrant submits in support of his claim. Rather it involves a subjective determination of what constitutes "extreme hardship."

In this respect, the process of evaluating hardship claims is quite different from the normal classification decisions the local board must make. *See, e. g.,* 32 C.F.R. §§ 1622.12 (members of armed forces), 1622.25 (students), 1622.40 (sole surviving sons), 1622.41 (officials deferred by law), 1622.42 (aliens), 1622.43 (ministers and divinity students). Only in unusual circumstances do claims of this character require a subjective determination of any consequence, although of course every classification must be established "to the satisfaction of the local board." 32 C.F.R. § 1622.1(c). It is true that some claims require the board to make subjective findings, but with the exception of a claim of conscientious objection,[5] none requires such a wholly subjective determination as a hardship claim. For this reason alone, the court concludes that the *Haughton* rationale at least extends to claims of "extreme hardship." *See* United States v. Ayala, No. CR–70509 (N.D.Cal.1971) (Sweigert, J.) [6]

*Must a registrant state a prima facie case?*

Haughton v. United States, *supra,* appears to require a registrant to bring himself prima facie within the statutory exemption of deferment before the draft board is obligated to give reasons for its denial of the claimed classification.

---

5. For most classifications, a registrant can make out a prima facie case solely on the basis of objective facts. *See, e. g.,* Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953). In conscientious objector cases, the ultimate question is the registrant's sincerity. "In these cases, objective facts are relevant only insofar as they help in determining the sincerity of the registrant in his claimed belief, purely a subjective question." Witmer v. United States, 348 U.S. 375, 381, 75 S.Ct. 392, 396 (1955). Similarly, in cases of claimed hardship, although the objective facts of a registrant's financial and familial situation are indispensable, the determination of whether those facts would create extreme hardship if the registrant were inducted is a subjective determination.

6. The Ninth Circuit has also applied *Haughton* to requests for occupational deferments, suggesting the *Haughton* is not limited to conscientious objector claims. *See* United States v. Wallace, 435 F.2d 12, 16 (9th Cir. 1970).

In this case, there is some question whether the defendant did make out a prima facie claim. Because of this uncertainty, the court must consider the applicability of the *Haughton* requirement to cases in which a registrant has failed to make out a prima facie case, assuming *arguendo* that the defendant failed to do so here.

■ The *Haughton* rule evolved from a recognition of the special circumstances surrounding conscientious objector claims. In United States v. Seeger, 380 U.S. 163, 184, 85 S.Ct. 850, 863, 13 L.Ed. 2d 733 (1965), the Supreme Court observed that "in resolving these exemption problems one deals with the beliefs of different individuals who will articulate them in a multitude of ways." In recognition of this fact, the courts have exhibited considerable tolerance in examining the prima facie sufficiency of conscientious objector claims. *See, e. g.,* United States v. Zaragoza, 449 F.2d 1278 (9th Cir. 1971) (A finding that the registrant had not presented a prima facie claim "would be nit-picking and would unfairly discriminate against the unlearned and inarticulate in favor of the educated and fluent."); United States v. Stephens, 445 F.2d 192 (3rd Cir. 1971) ("Obviously appellant's presentation was an unsophisticated and fragmented one. He had neither the knowledge nor the intellectual wherewithal to synthesize his views into a series of appealing and neatly-turned phrases."); United States v. Haughton, 413 F.2d 736, 742 (9th Cir. 1969) ("[W]e are dealing with young people who may not have been required to articulate their beliefs before, or match them to the type of questions in the form 150."). Registrants are not entitled to counsel in proceedings before a draft board,[7] and the courts accordingly do not hold them to the same standards as a litigant represented by counsel. United States ex rel. Berman v. Craig, 207 F.2d 888, 891 (3rd Cir. 1953), restated with approval in

Simmons v. United States, 348 U.S. 397, 404, 75 S.Ct. 397, 99 L.Ed. 453 (1955).

■ Although claims of conscientious objection are unique, the court has already explained its belief that claims of extreme hardship present analogous problems. Moreover, the absence of objective standards makes the evaluation of prima facie sufficiency more difficult in a hardship case than in a conscientious objector case. If a registrant has failed to present a prima facie conscientious objector claim, a court can make this determination with reasonable certainty. However, a court cannot evaluate the prima facie sufficiency of a claim of extreme hardship with the same confidence. Therefore, the court concludes that when a registrant makes a claim of extreme hardship, the board must give its reason for denial.

In United States v. Stephens, 445 F.2d 192 (3rd Cir. 1971), the Court of Appeals for the Third Circuit shed some light on this problem. The majority of the court held that as the registrant had presented a prima facie case for exemption as a conscientious objector, Scott v. Commanding Officer, 431 F.2d 1132 (3rd Cir. 1970), required the local board to state its reasons for denial. Concurring in the result, Judge Aldisert disagreed with the majority's conclusion that the registrant had presented a prima facie case, but argued notwithstanding that the prima facie test was an "inappropriate" requirement. This court agrees. Although Judge Aldisert was speaking of claims of conscientious objection, his reasoning is equally applicable to claims of extreme hardship. First, fundamental notions of fairness require that an unsuccessful applicant for a hardship deferment know the board's reasons for denial. For purposes of appeal, the registrant must know whether he presented incomplete factual allegations, or insufficient supporting data, or whether the board simply determined that no "extreme hardship" would result. Second,

7. United States v. Evans, 425 F.2d 302, 304 (9th Cir. 1970); Haven v. United States, 403 F.2d 384, 385 (9th Cir. 1968).

the process of informed administrative and judicial review requires findings by the local board. "A claim which might seem frivolous to a local board might appear of quite different character and substance to a reviewing tribunal. Indeed, this possibility of disagreement is the very *raison d'etre* for review, whether administrative or judicial." United States v. Stephens, *supra*, at 199 (concurring opinion).

The court has not discovered any case discussing this problem outside the context of a claim for conscientious objector status. It is clear, however, that there is no logical barrier to extending the rationale of *Haughton*. The holding of that case has been consistently followed in this circuit, see, e. g., United States v. Coffey, 429 F.2d 401 (9th Cir. 1970); United States v. French, 429 F. 2d 391 (9th Cir. 1970), and adopted in others. *See, e. g.*, United States v. O'Bryan, 450 F.2d 365 (6th Cir. 1971); United States v. Broyles, 423 F.2d 1299 (4th Cir. 1970); Scott v. Commanding Officer, 431 F.2d 1132 (3rd Cir. 1970). *But see* Gruca v. Secretary of the Army, 141 U.S.App.D.C. 851, 436 F.2d 239 (1970). The Third Circuit has recently reserved the question of whether the registrant must state a prima facie case. United States v. Hershey, 451 F.2d 1007 (3rd Cir. 1971). The case of United States v. Reese, 331 F.Supp. 1088 (N.D. Ga.1971) has already held that he does not:

"Concomitant with the Supreme Court's failure to indicate any 'prima facie' requirement in *Clay* [Clay v. United States, 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971)] is this Court's inability to comprehend a compelling reason for such a requirement as an original proposition. Apparently, the requirement finds its basis, in part, in a desire that the draft board should not be required to expend a great amount of its energies, other than complying with the Selective Service Regulations, in processing patently frivolous claims. Requiring a statement of reasons for an adverse decision, however, cannot be said to place any significant burden on the draft board. The board would not be required to render an exhaustive 'opinion' with findings of fact and conclusions of law which normally accompany the decisions of other administrative agencies (e. g., social security decisions). All that is required is a statement of reasons for the decision."

Certainly there is nothing immutable about the notion, heretofore sanctioned by the courts, that a prima facie claim is prerequisite to the local board's duty to give reasons for its decisions.

Requiring the local board to state reasons in such circumstances does not appear to impose any undue burden on the Selective Service System. If the board determines that a registrant has stated a prima facie case, this court reads *Haughton* to require it to state the reasons for denial. If, on the other hand, the board determines that a registrant has not stated a prima facie case, it is not difficult to say so. Requiring it to do so would relieve the registrant, appeal board, and the courts [8] of the necessity of guessing at what the local board decided. Although this court is mindful that it does not sit as a "super draft board," substituting its judgment for the judgment of the local board, Witmer v. United States, 348 U.S. 375, 380–381, 75 S.Ct. 392, 99 L.Ed. 428 (1955), the absence of the local board's reason for its decision forces the court to do just that. Otherwise, the court would be required to place judicial imprimatur on a decision which it did not understand. In the court's view, although the court should not be a "super draft board," neither

---

8. The need for relief is real. In his letter of appeal, the defendant stated: "I do not understand why my selective service classification was re-classified from 3–A to 1–A as my marital status and situation involved has not changed during the past year and will remain in time to come."

should it be a rubber stamp for the unreasoned decisions of the Selective Service System. Accordingly, the court concludes that where the local board's reason for denial cannot be ascertained with reasonable certainty, as it cannot here, the board must give reasons for its decision.

The motion for judgment of acquittal is granted.