**UNITED STATES of America,**
**Appellee,**

v.

**Kevin. Patrick FORD, Defendant,**
**Appellant.**

**No. 72–1376.**

United States Court of Appeals,
First Circuit.

Argued March 6, 1973.

Decided May 14, 1973.

Lawrence E. Katz, Cambridge, Mass., by appointment of the Court, with whom Haroz, Katz, Rockwell & Sager, Cambridge, Mass., was on brief, for appellant.

Robert B. Collings, Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty., was on brief, for appellee.

Before COFFIN, Chief Judge, ALDRICH and McENTEE, Circuit Judges.

McENTEE, Circuit Judge.

This is an appeal from a conviction under 50 U.S.C. App. § 462 for refusing to submit to induction into the Armed Forces. Appellant contends that the validity of his induction order was vitiated by defective Selective Service procedures in processing his request for conscientious objector classification (I–O). For the reasons stated below, we affirm.

Appellant, Kevin Patrick Ford, first registered with Local Board No. 67 in Saugus, Massachusetts on August 7, 1967. After having had a series of classifications which we need not recount here, he was placed in Class I–A on Sep-

tember 8, 1970. On September 30, appellant submitted a written request for SSS Form 150 (Special Form for Conscientious Objector). This form was issued to him on the same date and was returned by him to his local board on October 29, 1970. In completing Form 150, appellant declined to sign either Statement A or B under Series I of the questionnaire, entitled "Claim for Exemption." These statements provide the registrant with an opportunity to claim exemption from combatant service only, or from both combatant and non-combatant service, on the basis of a religiously grounded opposition to "war in any form." Instead, appellant stated that "[a]s a Selective Conscientious Objector, I feel that neither of the two statements apply to me." In elaborating the beliefs on which he based his claim to exemption, appellant reiterated that he was a selective conscientious objector and stated that his religious convictions prevented him from participating in "a war I believe to be unjust." Appellant's explanation of his beliefs also included the following statement:

"From my own perspective of the theory of proportionality, I firmly believe that the loss of human life, the human suffering, the atrocities committed by both sides, and the total destruction of much of the Vietnamese countryside, outweigh whatever vague good may or may not come from our involvement in Southeast Asia.

"With these as my moral and religious beliefs, I can in no way justify to God, or to myself, my participation, in any form, in the war effort in Southeast Asia."

In addition to his Form 150, appellant submitted various letters of recommendation to the local board in support of his claim. Virtually all of these letters made some reference to the selective nature of his conscientious objection, i. e., his opposition to the war in Vietnam.

On November 17, 1970, appellant appeared before his local board for a courtesy interview. Without his knowledge, a summary of this meeting was prepared by the local board's Executive Secretary and was placed in his file. He was never provided with a copy of this summary, which read as follows:

"Registrant was questioned as to his views and stated his stand that he was a Selective Conscientious Objector. He claimed that as a Catholic he didn't believe that the war in Vietnam was just. The local board voted unanimously to classify the registrant in Class I–A."

Following this interview, the local board reopened Ford's classification and, without stating any reasons for its action, reclassified him I–A. He thereupon notified the local board that he chose to exercise his right to a personal appearance. This second meeting with the board was held on January 26, 1971. A summary was again prepared by the Executive Secretary and was this time signed by Ford. A copy of the summary was placed in his file and read as follows:

"Registrant was questioned by the local board. Claimed as a Roman Catholic it is his right to feel as he does. Claimed that war is Evil and takes away the dignity of Human Beings. Would rather go to jail than to war. Decided to become a Conscientious Objector during the past year. Objects to participation in the Vietnam War—a particular war . . . . Board voted unaninimously [sic] to classify registrant in Class I–A."

In reaffirming appellant's I–A classification, the local board once again did not state any reasons for its denial of his conscientious objector claim. After receiving notification of the local board's action, Ford took an administrative appeal. His file was accordingly forwarded to the appeal board on February 25, 1971.

Prior to the appeal board's consideration of appellant's claim, the clerk of the board prepared a summary of his case consisting solely of the words "selective C.O." Neither this summary nor any

part of his file was made available to the members of the board before their meeting of March 26, 1971. At that meeting, the appeal board considered his claim and voted unanimously to classify him I–A. No reasons were given for its action. Appellant subsequently failed to report for induction on May 6, 1971, and his indictment, trial and conviction followed.

Ford's primary contentions on appeal relate to the failure of both draft boards to state their reasons for denying him conscientious objector status. In United States v. Edwards, 450 F.2d 49 (1st Cir. 1971), we held that where a *prima facie* case for conscientious objector classification has been stated, the local board must inform the registrant of its reason for denying his claim. Appellant first argues that his presentations to the local board made out such a *prima facie* claim, and that a statement of reasons was therefore required under *Edwards*. He further contends, however, that even if a *prima facie* claim was not made out, the local board's *de facto* reopening of his classification was sufficient to bring the reasons requirement into play. Finally, he urges us to expand our holding in *Edwards* beyond the realm of *prima facie* claims to require a statement of reasons whenever a request for conscientious objector classification is denied by a local board.

We find considerable force in appellant's third argument, which is supported both by logic and some authority. *See* United States v. Stephens, 445 F.2d 192, 199–200 (3d Cir. 1971) (Aldisert, J., concurring); United States v. Auger, 337 F.Supp. 342 (N.D. Cal.1972); United States v. Reese, 331 F.Supp. 1088 (N.D.Ga.1971); *cf.* SEC v. Chenery Corp., 332 U.S. 194, 196–197, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). The leading Supreme Court case concerning the reasons requirement, Clay v. United States, 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971), may also be read as providing support for appellant's viewpoint. *But see* Fein v. Selective Service System, 405 U.S. 365, 380, 92 S.Ct. 1062, 31 L.Ed.2d 298 (1972). Nevertheless, a number of considerations prevent us from accepting appellant's invitation to depart from our holding in *Edwards*. First, our opinion in that case distinguished our earlier decision in United States v. Curry, 410 F.2d 1297 (1st Cir. 1969), precisely on the ground that, in *Curry,* a *prima facie* case for exemption had not been made out. Thus, the clear import of *Edwards* was that a statement of reasons would not be required in the absence of a *prima facie* claim. This was a proposition on which draft boards within this circuit were entitled to rely, and we would have difficulty in now ruling that they were incorrect in doing so. Nevertheless, we might undertake such a holding if it were necessary to effectuate a rule of law more in accordance with proper administrative procedure than the one we originally laid down in *Edwards.* In December of 1971, however, the Selective Service System amended its own regulations to require that a statement of reasons be recorded in a registrant's file whenever he is placed in a class other than the one he has requested. 32 C.F.R. 1623.4(c) (1972). In view of this amendment, the only effect of our departing from *Edwards* would be to vitiate an uncertain number of Selective Service prosecutions merely because of a local board's reliance on a decision of this court. Moreover, the federal courts of appeals have been virtually unanimous in limiting the applicability of the reasons requirement to cases where a *prima facie* claim has been made out. *See, e. g.,* Cale v. Volatile, 465 F.2d 1110 (3d Cir. 1972); United States v. Heigl, 455 F.2d 1256 (7th Cir.), cert. denied, 406 U.S. 925, 92 S.Ct. 1796, 32 L.Ed.2d 127 (1972); United States v. Wood, 454 F.2d 765 (4th Cir. 1972); United States v. Stetter, 445 F.2d 472 (5th Cir. 1971); United States v. Haughton, 413 F.2d 736 (9th Cir. 1969); but see United States v. Lenhard, 437 F.2d 936 (2d Cir. 1970) (no mention made of *prima facie* prerequisite). In view of these authorities, and the considerations discussed above, we

hold that appellant's draft boards were not obligated to state their reasons for denying his conscientious objector claim unless his entitlement to such classification was *prima facie* established.

■ Turning then to the *prima facie* validity of appellant's application for conscientious objector status, we find that his claim clearly failed to meet the statutory criteria for exemption. See 50 U.S.C. App. § 456(j). In order to meet these standards, a registrant must be opposed to war in any form, Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971), on the basis of "religious training and belief" as that term has been construed in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965) and Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970). We think that the appellant has indisputably failed to meet the first of these requirements; rather, by his own characterization, he is a "selective conscientious objector."[1] Nowhere in any of the documents submitted to the local board in support of his claim was there a clear statement of his opposition to war in any form. On the contrary, appellant's Form 150 unambiguously limited the scope of his conscientious objection to the war in Vietnam and other wars which he thought to be unjust, and the supporting letters written in his behalf were totally consistent with this limitation. While his counsel has attempted to portray several of his isolated statements in his Form 150 as indicating a possibly universal opposition to war, we think that the form, read as a whole, presents an absolutely clear instance of selective conscientious objection. Furthermore, we do not believe that the statements contained in the summary of

Ford's personal appearance before his local board suffice to cure the deficiencies of his Form 150. That summary quotes appellant to the effect that "war is [e]vil" and that he "[w]ould rather go to jail than to war." The summary also contains the notation, however, that he "[o]bjects to participation in the Vietnam War—a particular war." In view of the total lack of ambiguity in his Form 150, we will not contrive a *prima facie* claim from these fragmentary comments.

■ Appellant contends, however, that even if a *prima facie* claim was not made out, a statement of reasons was still required in light of the local board's reopening of his classification. He bases this argument upon the provisions of 32 C.F.R. 1625.4 and the Solicitor General's confession of error in Joseph v. United States, 405 U.S. 1006, 92 S.Ct. 1274, 31 L.Ed.2d 473 (summary disposition) (1972). The above regulation provides in relevant part:

> "When a registrant files with the local board a written request to reopen and consider anew the registrant's classification and . . . the local board is of the opinion that such facts, if true, would not justify a change in such registrant's classification, *it shall not reopen the registrant's classification*." (Emphasis added.)

Appellant thus argues that, since the local board was expressly prohibited from taking such action in the absence of a *prima facie* case for exemption, the presumption of administrative regularity now requires us to treat his claim as *prima facie* valid for purposes of applying the reasons requirement. This was essentially the position taken by the Solicitor in *Joseph*. In that case, the So-

---

1. Appellant argues, citing Welsh v. United States, *supra*, 398 U.S. at 341, 90 S.Ct. 1792, that his own characterization of his beliefs should not be determinative. *Welsh*, however, involved the interpretation of the "religious training and belief" requirement, a term notable for its all-embracing elasticity. *See* United States v. Seeger, *su-* pra; United States v. Welsh, *supra*. By contrast, we think that the meaning of the words "opposed to war in any form" should be perfectly clear to the average registrant. We therefore see no reason not to take appellant's statements at face value.

licitor conceded that a statement of reasons was necessary under similar circumstances, although he maintained that the petitioner had not stated a *prima facie* claim and that such a claim would ordinarily be the prerequisite to applying the reasons requirement. The government now seeks to distinguish *Joseph*, however, on a ground suggested by the Solicitor's memorandum in that case. *See* Joseph v. United States, *supra,* Memorandum for the United States at 20–21. The government's argument rests, rather anomalously, on its concession that the record reveals no basis in fact for questioning the sincerity of Ford's beliefs. This being the case, the government reasons, we can know with certainty that the local board ultimately rejected appellant's claim because of his failure to meet the statutory criteria for exemption. Since the local board could not have believed that a *prima facie* claim existed in reopening his classification, the syllogism continues, the presumption of administrative regularity is rebutted and *Joseph* thereby distinguished.

In all candor, we are not favorably impressed by this reasoning which, in our view, borders on the metaphysical. Given the fact that a local board has improperly reopened a classification to consider a non-*prima facie* claim, we can attach no importance to whether this action was taken in clear disregard of the regulations or because the local board erroneously believed that a *prima facie* case had been stated. Nevertheless, we cannot adopt appellant's position and reverse his conviction on this ground. Notwithstanding the Solicitor's memorandum in *Joseph*, we are unable to perceive any logical connection between the reasons requirement as laid down in *Edwards* and the technical procedures followed by a local board in denying a conscientious objector claim. When we adopted the reasons requirement in *Edwards*, we emphasized that a registrant must be aware of the basis for the local board's rejection of his claim if he is to meaningfully exercise his right to an ad-

ministrative appeal. We distinguished our earlier decision in *Curry*, however, on the ground that the non-*prima facie* registrant would not be prejudiced by an absence of reasons, since he would be unable, in any event, to submit additional and consistent information to the appeal board in support of his claim. If prejudice is indeed absent in this latter situation, it is not supplied by the local board's erroneous reopening of the registrant's classification. Since the Supreme Court did not write an opinion in *Joseph*, but merely remanded for reconsideration in light of the Solicitor's position, we are not bound by his reasoning in that case. Accordingly, we find appellant's arguments on this point to be without merit.

Appellant also argues for reversal on the basis of the allegedly inadequate procedures followed by the appeal board in evaluating his request for conscientious objector status. First, he contends that the appeal board in effect failed to give *de novo* consideration to his classification by improperly relying on a summary of his case prepared by the board's clerk and by devoting an average of only sixty-four seconds to each case it considered at its March 26 meeting; second, he argues that his appeal was prejudiced by the presence in his file of an unauthorized summary of his courtesy appearance before the local board. We shall consider these contentions in order.

■ There is no question but that the insertion into the file of the notation "selective C.O." by the appeal board clerk violated 32 C.F.R. 1626.24(b), confining appeal board consideration to the local board record. The circumstances here presented, however, make this the rare case where we can say that the notation could not have been prejudicial to Ford. As discussed above, he characterized himself as a selective conscientious objector in completing Series I of his Form 150. Thus, the clerk's summary did no more than accurately describe the basis on which appellant was seeking exemption. He argues, however, that the evidence indicates an

undue reliance by the appeal board on this summary, and that the board failed to make an independent and complete evaluation of his file. While the clerk did testify that the members of the appeal board might not read a registrant's entire file in a case characterized by her as "selective C.O.," she also indicated that the registrant's "statement" would invariably be considered. We understand the latter part of this testimony to be a reference to Series I of the Form 150. In the instant case, this was all that the board needed to consider. Having once determined, on the basis of appellant's own unambiguous statement, that he did not meet the statutory criteria for exemption, the appeal board was not required to consider information relating to the sincerity and religious nature of appellant's beliefs. This is not to say that we might not find prejudice from the appeal board's failure to consider the entire file if anything contained therein tended to contradict the *prima facie* invalidity of the registrant's claim. In the present case, however, all of the evidence presented by the appellant pointed inexorably to the fact that he was a selective conscientious objector, and thus not entitled to I–O classification.

 We find a similar lack of merit in appellant's argument that the appeal board devoted an insufficient amount of time to the consideration of his claim. Assuming *arguendo* that an average time statistic would provide a sufficient basis for reversing on this ground, *but see* United States v. Neckels, 451 F.2d 709 (9th Cir. 1971), we think that the obvious facial invalidity of appellant's claim precluded prejudice in this instance. *See* United States v. Young, 324 F.Supp. 69, 71–73 (D.Minn.1970).

 As to the matter of the unauthorized summary of appellant's courtesy interview with the local board, we recognize that the presence of this summary violated 32 C.F.R. 1626.13(a) and 1624.2(b), which together require that any written summary of a personal appearance be prepared by the registrant. Nevertheless, we observe again that this statement contained no information beyond that presented by Ford in his Form 150. Moreover, the summary of his subsequent personal appearance before the board, which was signed by appellant, repeated the possibly prejudicial information contained in the earlier summary—i. e., that his conscientious objection was aimed at a *particular* war. The cases cited by appellant are relevant, but nevertheless distinguishable. In United States v. Droge, 464 F.2d 439 (9th Cir. 1972), there was no question that the registrant's claim to conscientious objector status was *prima facie* valid on its face. After an interview with the registrant, however, the local board concluded that his claim was based essentially on opposition to the war in Vietnam rather than on conscientious objection to war in any form, and accordingly classified him I–A. Without the registrant's knowledge, an unauthorized summary of this interview tending to support the board's conclusions was placed in his file. The registrant's administrative appeal was subsequently denied without a statement of reasons. Characterizing the local board's summary as "highly prejudicial" to the registrant, the court of appeals reversed his conviction. In the instant case, however, we find no prejudice because the summary of appellant's courtesy interview was merely repetitive of the statements contained in his Form 150. United States v. Fisher, 442 F.2d 109 (7th Cir. 1971), is similarly distinguishable, since in *Fisher* the unauthorized summary was also highly prejudicial to the registrant and touched upon matters not discussed in his Form 150.

 Little need be said with regard to appellant's final contention that the evidence was insufficient to establish an identity of persons between himself and the registrant whose Selective Service records were introduced at trial. In addition to the existence of an identity of names, the Selective Service documents introduced into evidence contained a de-

scription of the age, race, height, hair color, eye color, weight and build of the registrant named therein. Under these circumstances, the trial court's finding that the registrant Ford and the defendant Ford were one and the same person cannot be said to be without adequate support in the record.[2]

Affirmed.

---

2. Appellant argues that the district court's rejection of his motion for a judgment of acquittal on this ground was not based upon a factual finding that he was indeed the same person as the one whose records were introduced at trial, but rather upon an erroneous application of the doctrine of *"idem sonans."* The short answer to this contention is that the trial court's reason for denying this motion does not appear in the record. Moreover, while a description of the defendant Ford also does not appear in the record, he was presumably present at the trial, and the district court had ample opportunity to compare his features with those of the registrant.